JOHN CONARD, MARSHAL OF THE EASTERN DISTRICT OF PENNSYLVANIA—THE UNITED STATES, PLAINTIFFS IN ERROR v. THE PACIFIC INSURANCE COMPANY OF NEW YORK, DEFENDANTS.

The case of Conard v. The Atlantic Insurance Company, 1 Peters's Reports, 386, cited, and the principles decided in the same confirmed.

The bringing up with the record of the proceedings in the circuit court, the charge of the court at large, is a practice which this court has often disapproved, and deems incorrect.

The case of Harris v. Dennie, 3 Peters's Reports, 292, decided no more than that no creditor of the importer could, by any attachment or process, take goods imported into the United States upon their importation out of the possession of the United States, until the lien of the United States for the duties accruing thereon was actually discharged, either by payment of the duties or by giving security therefor, according to the requirements of the law on the part of the importer.

There is no doubt that if the importer has the general right and property in the goods, that right draws after it a constructive possession, and the master of the ship is but a bailee, maintaining the possession for his benefit.

There is no pretence to say that the property of the importer in the goods is devested by any possession subsequently taken by the United States, for the purpose of maintaining their lien for duties. That possession is not adverse to the title of the importer; and indeed it may be properly deemed not so much an exclusive as a concurrent and mixed possession for the joint benefit of the importer and of the United States. It leaves the importer's right to the immediate possession perfect, the moment the lien for the duties is discharged. And if he tenders the duties, or the proper security therefor, and the collector refuses the delivery of the goods, it is a tortious conversion of the property for which an action of trespass or trover will lie.

The case not being one which called for vindictive or exemplary damages, the circuit court charged the jury that the plaintiffs were entitled to recover such damages as they had proved themselves entitled to, on account of the actual injury sustained by the seizure and detention of the goods. And in ascertaining what these damages were, the court directed them that the plaintiffs had a right to recover the value of the goods (teas) at the time of the levy, with interest from the expiration of the usual credit on extensive sales. This was in conformity to the decision of this court in the case of Conard v. Nicoll, 4 Peters's Reports, 291.

ERROR to the circuit court of the United States, for the eastern district of Pennsylvania.

This was an action of trespass de bonis asportatis, brought by the Pacific Insurance Company of New York, against John Conard, marshal of the eastern district of Pennsylvania.

[Conard v. The Pacific Insurance Company.]

The plaintiffs declared in the common form of trespass, specifying the goods and chattels seized and taken by the defendant, to wit: sundry packages of teas of the value, altogether, of upwards of sixty thousand dollars, and laying the damages at one hundred and twenty thousand dollars.

To this declaration the defendant pleaded the general issue: and also pleaded specially, 1. That on the 1st of May 1828 the plaintiffs received forty thousand dollars, paid to him by the defendant, in full satisfaction of the trespasses and wrongs complained of. 2. That at the April sessions of the court 1826, the plaintiffs impleaded him in a plea of trespass to the plaintiffs, damages forty thousand dollars, and on the 30th of April 1828, by judgment of the court, recovered the same, which is the same trespass complained of in this declaration, which judgment remains in full force; and afterwards, on the 30th of April 1828, the said sum of forty thousand dollars was paid to him in satisfaction thereof. 3. That at April sessions 1826, the plaintiffs impleaded him in a certain plea of trespass to his damage forty thousand dollars, being the identical trespass complained of in this suit, and on the 30th of April 1828 the said plaintiffs recovered in the said plea by the judgment of the court against the defendant, with six cents damages, and costs which they had sustained by the same trespasses, which judgment remains in force; and that on the 30th day of April 1828, the sum of forty thousand dollars was paid in full satisfaction thereof. Upon the first plea issue was joined. To the special pleas the plaintiffs replied that they did not receive the sum of forty thousand dollars, in full satisfaction of the trespasses and damages complained of, and of the other wrongs in the declaration mentioned; and tendered an issue thereon. To the third and fourth pleas the plaintiffs replied that they ought not to be barred from maintaining their action by any thing alleged in the same, because on the 9th day of October 1826, a certain bond was executed by the said plaintiffs, and by them delivered to and accepted by the United States of America, in the following words:

"Know all men by these presents, that we, the Pacific Insurance Company of New York, are held, and firmly bound unto the United States of America, in the sum of sixty thou-

sand dollars, lawful money of the United States of America, to be paid to the said, the United States of America, their certain attorney, successors, or assigns, to which payment well and truly to be made, and done, we do bind ourselves, and our successors, firmly by these presents. Sealed with our seal of incorporation, and dated this ninth day of October, in the year of our Lord one thousand eight hundred and twenty-six.

" Whereas the goods and merchandise described in an invoice, a copy whereof is annexed, imported from Canton in the ship Addison, safely arrived at the port of Philadelphia, have been levied on by the marshal of the eastern district of Pennsylvania, by virtue of an execution, on a judgment in favour of the United States, against Edward Thomson, of Philadelphia, as the property of the said Edward Thomson; and, whereas, the Pacific Insurance Company of New York claim to be the owners in law or equity of the said goods, and actually hold the bill of lading and invoice thereof, under which the said goods have been duly entered at the customhouse, and the duties thereon secured to be paid according to law; and, whereas, it has been agreed by and between the secretary of the treasury in behalf of the United States, and the said Pacific Insurance Company, that a suit shall be instituted, by the said named company, against the said marshal, in which the sole question to be tried and decided shall be, whether the United States, or the said Pacific Insurance Company, are entitled to the said goods and the proceeds thereof; and, whereas, it has been further agreed that the said goods shall be delivered to the said Pacific Insurance Company, without prejudice to the rights of the United States under the said executions or otherwise, and that they shall sell and dispose of the same in the best manner and for the best price they can obtain therefor, and for cash, or upon credit, as they may judge expedient; and that the moneys arising from the sale thereof, deducting the duties and all customary charges and commissions on such sales, shall be deposited by the said Pacific Insurance Company, as soon as received from and after the sale, in the Bank of the United States, to the credit of the president of the said bank, in trust, to be invested in the stocks of the United States, in the name of the said president, in trust, so to

remain until it shall be judicially and finally decided to whom the said goods, or the proceeds thereof, do of right, and according to law, belong; and, on the further trust, that whenever such decision shall be made the said president of the said bank shall deliver the said moneys, or transfer the said stocks, to the party in whose favour such decision shall be made. And, whereas, in pursuance of the said agreement, the said goods have this day been delivered to the said Pacific Insurance Company, for the purposes aforesaid, it being understood and agreed that such delivery of the goods shall not prejudice any existing right of the said company. Now, the condition of this obligation is such, that if the said Pacific Insurance Company shall comply with the said arrangements, and well and truly sell and dispose of the said goods, and cause the moneys arising from the sale thereof, after deducting therefrom the duties, charges and commissions, as aforesaid, to be deposited in the Bank of the United States, to the credit of the president of the said bank, in trust, according to the true intent and meaning of the above recited agreement, and for the purposes therein set forth, this obligation to be void, but otherwise, to be and remain in full force and virtue."

Sealed and delivered by the Pacific Insurance Company of New York.

Invoice of merchandise shipped by Rodney Fisher, attorney for John R. Thomson, on board the American ship Addison, A. Hedelius, master, bound for Philadelphia, for account and risk of Edward Thomson, Esquire, a native citizen of the United States of America, residing there, and consigned to order.

The invoice amounted to twenty-nine thousand nine hundred and eighty-one dollars and twenty-one cents, and was dated Canton, November 22, 1825, and signed Rodney Fisher, attorney for John R. Thomson.

And that, heretofore, to wit, on the same day and year aforesaid, at the district aforesaid, a certain other bond was executed by the said plaintiffs, and by them delivered to, and accepted by the United States of America, in the following words:

This bond was in all respects similar to that last recited, saving that it applied to an invoice of merchandise amounting

VOL. IV.—2 I

to thirty thousand one hundred and seven dollars eighty seven cents, shipped in the same manner on board the ship Superior from Canton on the 2d of December 1825.

The plaintiffs further alleged, that when the bond was executed the defendant agreed that a suit should be instituted against him as marshal, aforesaid, in which the sole question to be tried and decided should be, whether the United States or the plaintiffs were entitled to the goods or the proceeds.

And do further say, that afterwards, to wit, at the April sessions of this court, in the year one thousand eight hundred and twenty-six, in conformity with the said bond, and with the said agreement, a suit was instituted by the said plaintiffs, in their name as plaintiffs, against the said John Conard, marshal of the eastern district of Pennsylvania, for the trial and decision of the said question only, and for no other purpose whatever, and in which suit the sole question tried and decided was, whether the United States or the said plaintiffs were entitled to said goods, and the proceeds thereof. And further, that all the pleadings and proceedings in the said suit were subject to the said agreement, and were governed and controlled thereby: and that, in fact and in truth, the said plaintiffs did not, on the trial of the said suit, claim to recover, and did not offer any evidence for the purpose of recovering any damages whatever from the said John Conard, marshal; and that no damages whatever were recovered in the said court, except six cents. And further, that in the said suit it was judicially and finally decided, that the said goods and the proceeds thereof did, of right and according to law, belong to the said plaintiffs, and a verdict and judgment for nominal damages were rendered; and the plaintiffs did not receive or claim therein or thereby, any other or further damages, or any damages whatever, for the said trespass and other wrongs. And further that the suit here mentioned, and the plea in the defendant's plea mentioned and referred to, are the same plea or suit, and not other or different pleas or suits, than in the said plea mentioned.

Upon the first of these replications issue was joined. To the others, that is, the replications to the third and fourth pleas, there was a general demurrer, and joinder in demurrer.

Upon this demurrer, the court below gave judgment for the plaintiffs.

On the 22d day of May 1830, the issues came to trial.

The plaintiffs produced a variety of evidence, parol and written, to establish their title to the property, before and at the time of the trespass complained of, being substantially the same as that exhibited by the plaintiffs in the case of the Atlantic Insurance Company v. Conard.

They also give in evidence a writ of fieri facias, at the suit of the United States, against Edward Thomson, under which it appeared, by indorsement thereon, that the defendant (Conard) levied upon the goods and merchandise in the declaration specified on the 16th day of March 1826, on board the ship in which they arrived.

And they offered "further to prove a demand of the collector, and refused by him, after the levy was made, to permit an entry and deliver the goods. But the counsel for the defendant objected to such proof; and the objection was overruled by the court, and the evidence given."

To this opinion of the court the defendant excepted.

The evidence being closed, the counsel for the defendant asked the court to charge the jury:

1. That the United States had a lien upon the goods imported in the ships the Superior and the Addison, from Canton, in the month of March 1826, for the duties accruing upon that importation: and that the United States, as an effect of their liens, had the possession of the said goods the moment of their importation.

2. That the documents exhibited in evidence, prove that, Edward Thomson was, in fact, the *importer* of the goods in question, and that, under the act of congress of 1799, he must be regarded, for the purposes of that act, as the original consignee and owner, although the *property* in the goods might have been in the plaintiffs.

3. That Edward Thomson as the *importer*, and the *original consignee and owner*, were the only persons entitled *by law* to enter the goods at the custom-house, or give bonds for the duties, or to pay the duties: and that any recognition by the collector or other public officer, of any other person, as entitled to enter, is not authorised by the law of the United States, and cannot be admitted to vary the rights of the parties.

4. That the United States having a lien upon, and a possess-

[Conard v. The Pacific Insurance Company.]

ion of, the goods at the time of their importation, and Edward Thomson being, in contemplation of the act of congress, the only person by whom this entry could legally be made, the possession of the United States was never divested by any act of the plaintiffs to which the United States did not consent.

5. That possession of the goods being, at the time of the levy made by the defendant, legally in the United States, and neither actually nor constructively in the plaintiffs, the present action, founded as it must be upon a possession by the plaintiffs either actual or constructive, cannot be maintained.

6. That according to the act of congress, and Edward Thomson regarded as the original importer, owner and consignee, and he being largely indebted upon bonds to the United States for duties then remaining unpaid, the lien of the United States for the duties which accrued on that importation could not be divested, except upon the payment of the said duties in cash.

7. That the agreement of the 9th of October 1826, connected with the facts given in evidence, amounts to, a release or waiver by the plaintiffs of all demand for damages arising from the acts of the officers of the United States in taking possession and detaining the goods in question.

8. That in an action of trespass, such as the present, where no circumstances of aggravation in the motives or conduct of the defendant are alleged or pretended, the value of the goods taken, or the diminution of that value by their detention, is the only just and legal measure of damages.

9. That the claim for damages, on the score of professional compensation, paid in this and other causes connected with the transaction, is inadmissible, and that therefore the evidence respecting it should be wholly disregarded by the jury.

The charge to the jury was as follows:

In this case there are two questions for your consideration:

1. Whether the plaintiffs can sustain this action.

2. The amount of damages to which they are entitled.

The facts of the case are few. On the 10th and 11th July 1825, the plaintiffs advanced sixty thousand dollars to Edward Thomson on his respondentia bonds. He shipped the money for Canton, took bills of lading deliverable to his fac-

tor John R. Thomson, and assigned them to the plaintiffs. The money arrived safely; and was invested in the teas now in controversy. The teas were shipped on board of the ships Addison and Superior; which arrived in the Delaware on the 15th March 1826, when, with their cargoes, they were levied on by the defendant by virtue of an execution at the suit of the United States, against Edward Thomson. The teas in question were landed and deposited in the public stores, under the care of the custom house officer, where they remained until the fall of 1826, when, by an agreement made between the plaintiffs and the secretary of, the treasury, they were delivered to them and sold under their direction for their account.

Immediately on hearing of the levy, the plaintiffs, by their agent, offered to the collector to secure the duties, and demanded the teas. They were refused. On this state of the facts the counsel for the defendant contends that Edward Thomson remained the legal owner of the teas at the time of the levy: that the plaintiffs did not become the owners or consignees thereof or the agents of Thomson, so as to authorise them to enter the teas at the custom house according to the provisions of the thirty-sixth section of the revenue law, which he contends could only be made by Thomson himself: that he being indebted to the United States by bonds for duties unpaid, was, by the proviso of the sixty-second section of the law, prohibited from making an entry without the actual payment of the duties accruing, for which the United States had a lien until they were paid: and that therefore the plaintiffs, not having offered to pay the duties on their demand of the teas from the collector, had no right to the possession of the goods, and cannot maintain this action.

Were this a question open for consideration, I should have no hesitation in saying that the whole transaction between Thomson and the plaintiffs made them the legal owners and consignees of the property purchased by the outward shipment, and that as such they had a right to enter the teas on securing the duties, without being affected by the delinquency of Thomson at the custom house, as much so as if the shipment had been made in their own name and on their own account.

. But it has not been left for me to declare the law in this case. It has been definitively settled by the supreme court in the case of the Atlantic Insurance Company against Conard, decided at January term 1828, and the case of Francis H. Nicoll against Conard, at the last term. The first of these cases was an action of trespass brought to try the right of property in the plaintiffs to teas shipped in the Addison and Superior under circumstances in all respects agreeing with this case. The court decided that they were the owners and entitled to the proceeds of what had been sold under the agreement: the court declaring the plaintiffs to be the owners and consignees by the agreement between them and Thomson, and the consequent acts. The second was a similar action brought for the same purpose as well as the recovery of damages for levying on certain goods and a quantity of teas shipped and in all respects circumstanced like the present. The cause was tried before Judge Washington in this place, and resulted in a verdict and judgment for the plaintiffs, not only for the proceeds of the property which had been sold, but a large amount in damages. It was removed by writ of error to the supreme court, and the judgment affirmed. The judge who delivered their opinion did not think proper to add to or alter any thing in the very able and excellent charge delivered to the jury by his lamented predecessor. The affirmance was in these words: that charge embraced every point material to the decision of this case, and, connected with the opinion of the court in the former case, leaves for you and the court no other duty than acquiescence in the well established principles which control the cause before you.

The right of property in the teas which are the subject of this action has already been settled by the judgment of this court in a former action between the same parties, and is conclusive on that point in this.

But the defendant's counsel contends that in the case of Harris v. Denny, decided at the last term of the supreme court, a principle has been settled which will prevent the plaintiffs' recovering. The case was this: James D'Wolf, Jun. was indebted to the United States on duty bonds unpaid: goods consigned to him arrived in the port of Boston, which were attached by his creditors in Massachusetts by a writ in the hands

of Denny the sheriff. The marshal attached the same goods by process from the district court, at the suit of the United States. At the time of the attachment by Denny, the plaintiffs offered to secure the duties, and demanded possession, which the collector refused. On an action by the sheriff against the marshal, the court decided that he could not sustain it, because the plaintiffs in the attachment were neither owners, consignees, nor agents, that D'Wolf continued the owner, and being delinquent on former bonds had no right to enter the goods till payment of the duties, and that the plaintiffs, claiming only as creditors, had no right to the possession on, the mere offer to secure them. This case has no bearing on the right of an owner or consignee to enter goods on offering to secure duties accruing. It was there declared that the United States had no lien on the goods for the amount due by D'Wolf on other importations. It only decided that a mere creditor could acquire no right to the possession of goods so imported consigned to D'Wolf, until the duties were actually paid.

The authority of the two cases referred to, does not seem to me to be at all shaken by that of Harris v. Denny, and I am therefore clearly of opinion that the plaintiffs have well established their right to maintain the present action for the recovery of damages for the seizure of the goods in question.

It is next alleged that by the agreement of the 9th of October, and the acts accompanying it, the defendant is released from all claims for damages. The decision of this and the supreme court in the case of Nicoll v. Conard, settles the reverse, and declares that damages may be recovered, notwithstanding this agreement. In this case, the defendant pleaded this agreement as a bar to this action:—the court overruled the plea and rendered judgment for the plaintiffs, so that this question has already been settled, as a matter of law, and is not open for your consideration as one of fact.

The counsel for the defendant next contends, that the rule of damages in this case is furnished by the balance due on the respondentia bonds, after deducting the amount of the sales. This ground is assumed by considering the plaintiffs as mere mortgagees of the teas, an idea wholly inadmissible, after the two solemn decisions of the supreme court, each adjudging the legal right of property to be in the respective plaintiffs, as own-

ers; and one of them awarding damages without any reference to the amount due on the respondentia bonds.

These decisions are binding authority on this court, which must be governed by them to their full extent. We are not at liberty to say that the plaintiffs, in those actions were legal owners, only to the extent of the debt due them by Edward Thomson. The entire property in the teas was vested in them, and this court has passed the same judgment as to those now in controversy. This action of trespass would assume a singular aspect, if the plaintiffs could not recover damages to the amount of their property which has been taken from them by the defendant Edward Thomson, who had no legal property in these teas. Whether the plaintiffs can in any event be considered as trustees for him, his creditors, or assigns, is not material to inquire in this action. On this question of damages, we cannot settle accounts between trustees and cestui que trusts (if there can be such, as to this property), who are no parties to this suit. It is enough for the plaintiffs to exhibit record evidence of their being the acknowledged legal owners. It necessarily results, from such ownership, that they are legally entitled to all the damages arising from its seizure and detention. The right to damages must be commensurate with the right of property. To adopt any other rule would introduce endless confusion and mischief. The plaintiffs then are before you as the legal owners of the teas, and with no legal impediment in the way of their recovery.

The next question for your consideration, is the amount of damages which the plaintiffs are entitled to recover, as the legal owners of the teas.

The rule which ought to govern juries, in assessing damages for injuries to personal property, depends much on the circumstances of the case. When a trespass is committed in a wanton, rude, and aggravated manner, indicating malice or a desire to injure, a jury ought to be liberal in compensating the party injured, in all he has lost in property, in expenses for the operation of his rights, in feeling or reputation: and even this may be exceeded by setting a public example to prevent a repetition of the act. In such cases there is no certain fixed standard; for a jury may properly take into view, not only what is due to the party complaining, but to the public, by

[Conard v. The Pacific Insurance Company.]

inflicting what are called in law speculative, exemplary, or vindictive damages. But, when an individual, acting in pursuance of what he conceives a just claim to property, proceeds by legal process to enforce it, and causes a levy to be made on what is claimed by another, without abusing or perverting its true object, there is and ought to be a very different rule, if, after a due course of legal investigation, his case is not well founded. This is what must necessarily happen in all judicial proceedings, fairly and properly conducted, which are instituted to try contested rights to property. If the plaintiff, in an action of trespass, succeed, he is entitled to legal satisfaction for the injury sustained by the taking and detention, in cases not attended with the circumstances of aggravation before mentioned. The general rule of damage, is the value of the property taken, with interest from the time of the taking down to the trial. This is generally considered as the extent of the damages sustained, and this is deemed legal compensation, which refers solely to the injury done to the property taken, and not to any collateral or consequential damages, resulting to the owner by the trespass. These are taken into consideration, only in a case more or less aggravated. But where the party, taking the property of another by legal process, acts in the fair pursuit of his supposed legal right, the only reparation he is bound to make to the party who turns out ultimately to be injured, is to place him, as to the property, in the same situation in which he was before the legal trespass was committed. The costs of the action are the only penalty imposed by the law, which limits and regulates the items and amount. In the present case, the defendant acted under the orders of the government, in execution of his duties as a public officer: he made the levy, but committed no act beyond the strictest line of his duty, which placed him in a situation where he had no discretion. The result has been unfortunate for him: he has taken the property of the plaintiffs for the debt of Edward Thomson, and must make them compensation for the injury they have sustained thereby, but no further.

It has long since been well settled, that a jury ought in no case to find exemplary damages against a public officer, acting in obedience to orders from the government, without any cir-

cumstances of aggravation, if he violates the law in making a seizure of property. In the case of Nicoll against the present defendant, Judge Washington instructed the jury that they might give the plaintiff such damages as he had proved himself to be justly entitled to, on account of any actual injury he had proved to their satisfaction he had sustained, by the seizure and detention of the property levied on, but that they ought not to give vindictive, imaginary, or speculative damages. The affirmance of his charge makes it the guide for us, in this case. Our true inquiry then must be, what damages have the plaintiffs so proved themselves to be entitled to?

There can be no doubt that they have a right to the value of the teas at the time of the levy, with interest from the expiration of the usual credit on extensive sales. You may ascertain the value from the sales made at New York or this place in the spring of 1826. If, in your opinion, they afford evidence of their real value, or if you are satisfied from the evidence you have heard that the seizure and storing of these teas had the effect of depressing the prices, you may make such additions to the prices at which sales were actually made, as would make them equal to what they would have been, had they come to the possession of the plaintiffs at the time of the levy. But you may perhaps think that, under all the circumstances of this case, it would not be proper to affix a valuation beyond the sales of other teas of a quality similar to those in controversy, and that they afford a fair value of what the plaintiffs would have received had they remained at their disposal, which will afford a correct mode of ascertaining their actual value. This, however, is a matter exclusively for your consideration. You will judge of their value from all the evidence.

Thus far the case is attended with no difficulty. But it is not so easy to decide on the other items for which the plaintiffs claim an allowance in damages.

In marine trespasses the supreme court have, at different times, laid down the following as the rule of damages, in cases unaccompanied with aggravation.

In 2 Cranch, 124—156, the actual prime cost of the cargo, interest, insurance, and expenses necessarily sustained by bringing the vessel into the United States.

In 3 Dallas, 334, the full value of the property injured or destroyed: counsel fees rejected as an item of damage.

In 2 Wheaton, 335, the prime cost of the cargo, all charges, insurance, and interest.

In 3 Wheaton, 560, the prime cost, or value of the property at the time of loss, or the diminution of its value by the injury, and interest.

In 1 Gallison, 315, the prime cost and interest.

In 9 Wheaton, 376, 377, the case of the Apollo: where the vessel and cargo are lost and destroyed, their actual value, with interest from the trespass. The same rule also as to the partial injury—when property has been restored, demurrage for the vessel, and interest, where it has been sold, the gross amount of sales, and interest, with an addition of ten per cent, where the sale was under disadvantageous circumstances, or the property had not arrived at its place of destination.

In 3 Wheaton, 559, a loss by deterioration of the cargo, not occasioned by the improper conduct of the captain, is not allowed. Probable or possible profits on the voyage, either on the ship or cargo, have in every instance been rejected. 9 Wheaton, 376, 377, 383.

In none of these cases do the court recognise an allowance for such claims as are now set up by the plaintiff; but they all seem to concur in adopting a rule which excludes them. No good reason seems to be presented for a distinction between the compensation due to a party injured by a marine trespass, and one committed on land; neither do the judges, in delivering the opinion of the court, refer to such distinction as one existing. In the case of the Apollo, Judge Story observes, "such, it is believed, have been the rules generally adopted in practice, in cases which did not call for vindictive or aggravated damages." And it may be truly said, if these rules do not furnish a complete indemnification, in all cases, they have so much certainty in their application, and such a tendency to suppress expensive litigation, that they are entitled to some commendation on principles of public policy, 9 Wheat. 379; and, in almost all cases, will give a fair and just recompense, 3 Wheaton, 561.

In 3 Wheaton, 558, the court, in assigning their reasons for

giving other damages in the case then before them, remark, that it was one of gross and wanton outrage, without any just excuse, and that, under such circumstances, the honour of the country, and the duty of the court, equally require that a just compensation should be made to the unoffending neutral for all the injuries and losses actually sustained by him. The respondents, in that case, were the owners of a privateer who were, by policy, held responsible for the conduct of the officers and men employed by them, but not to the extent of vindictive damages. This seems to afford a practical definition of injuries and losses actually sustained, and the class of cases where compensation is allowed for them, which seems to be midway between those attended with no aggravation, and those which justify vindictive damages.

If the present were a case of marine trespass, I think there is no doubt that the damages could not exceed the value of the teas, and interest, if they had not been restored, or, as the result has been a restoration, the injury done by the seizure, which would be the loss in the sales, in the fall in the market, and interest for the detention: for there exist none of the matters of aggravation which have induced courts of admiralty to go further.

It is in their sound discretion to allow or refuse counsel fees, according to the nature of the case, either as damages, or a part of the costs, as in the case of the Apollo; but, by a late case, they were allowed as costs in a case where it was adjudged by the supreme court that no damages could be claimed. They form an item of costs in such courts, but not in courts of common law. It would be legislation, by the common law courts, to order them to be taxed as costs. The expenses of prosecuting claims of this description do not come within the principles established by the courts in causes of admiralty jurisdiction, but seem to be considered as extra damages, beyond the value and interest, where there is aggravation, but not otherwise.

I think it a safe rule in common law actions of trespass, and can perceive no sound reason for holding a marshal to a harder rule of damage than a naval or revenue officer, or the owner of a privateer. The same principle ought to govern all alike;

or, if any discrimination prevails, it should be in favour of the defendant who could use no discretion, but was bound to do the act which has exposed him to this action.

The case of Woodham v. Gelston, seems to me to be based on this rule, and the damages recovered in that case were only such as related to the property. The marshal fees were for seizing and keeping possession of the vessel. On the restoration to the plaintiff, he paid them: they were a charge on the property, in the nature of storage or bailment. In sanctioning this item, the court seem to put it on the ground of its being a charge on the defendant, and having been paid by plaintiff, he was entitled to recover it back: but they say, if it had been a mere voluntary payment, a deduction would have been proper. The other items were for wharfage and ship-keeping, which were disallowed because they were after the restoration. These were all the claims for expenses presented in that case, and they all attached to the property taken: none related to personal expenses in prosecuting the suit.

In declaring that voluntary payments shall be deducted, the court settled the principle as to the right to charge for the marshal's fees. They held the jury to strict rules: for they struck out an item of compound interest allowed by the verdict.

On the principle of this case of Woodham v. Gelston, the charges of the auction sales are allowable, because such sale had become necessary, and the expenses thereof became a charge on the teas. Also fire insurance, which is a substitute for bailment, and the premium paid in place of storage.

No case at common law has been cited, which conflicts with this rule to any extent, except one under the patent law, in which the learned judge of the first circuit has adjudged counsel fees in prosecuting a suit for an infringement of a patent-right, to be a part of the "actual damage" sustained by the plaintiff. Without questioning the correctness of this decision, it is sufficient to observe, that it may have been founded on the words of the act of congress, or reasons growing out of it. It is not declared to be a rule applicable to ordinary actions of trespass by the principles of the common law. Had it been so declared, the high authority of that court would have induced me to doubt the correctness of my opinion. But it does not

seem to me to establish the principle which must govern the present case, and leaves me free to follow the settled course of decisions, in making the value of the property and interest for its detention, the only test of damages in cases like the present. There is the same reason for making the expenses of prosecuting and conducting a suit for the enforcement of a contract, as for the recovery of damages for a trespass divested of every feature of aggravation, the legal compensation for the detention of a debt, is the amount due, interest and costs. Courts and juries can make no allowance for expenses incurred by withholding money justly due, however groundless or unjust the pretext for refusing payment may be. The rule of damages is fixed and invariable. There can be no legal distinction between the mere detention of property, and the price at which it was sold. If Conard had purchased these teas, and refused to pay the price, the plaintiffs' right of recovery becomes limited to that and interest. By the levy, he becomes liable for their value or market price. The expenses of the plaintiffs, in pursuing their right to damages due by contract, or those due by tort, would seem to come under the same principle of justice and law. It might be a good principle to allow them in both cases; but I find none such established, so as to have become a rule which can be laid down to you as the existing law of the action of trespass. It is all important, that in matters of this kind, the principle which governs them should be fixed and uniform. If we once begin to diverge from the old line, it will be difficult to draw and define a new one with accuracy. It may be thought a hardship that the plaintiffs shall not be allowed their actual disbursements in recovering this property; but the hardship is equally great in a suit for money lent, or to recover possession of land: they are deemed in law losses without injury, for which no legal remedy is afforded.

I am therefore of opinion, that you cannot, in assessing damages in this case, allow any of the items claimed by the plaintiffs for disbursements; they being consequent losses only, and not the actual or direct injury to their property which they have sustained by its seizure and detention, for which alone they are entitled to recover damages in this case, it not being attended with any circumstances of aggravation on the

part of the defendant.    Had there been any such, a very different rule would have been applied, by reimbursing the plaintiffs to the full extent of all their expenses and consequential losses.

You will then carefully weigh all the evidence in the cause, and ascertain the true value of the teas at the time of the levy, or when they could have come into market, by the rules of the custom house, if there had been no claim asserted to them by the United States, other than for the duties, with interest, deducting therefrom the net amount of sales; after payment of duties and charges of sales, the balance will be the amount to which the plaintiffs will be entitled.    You will consider Mr Conard as the only defendant.    The government is no party to this suit, nor is there any evidence which justifies us in saying that they agreed to indemnify him: that must depend exclusively on the discretion of congress, who are bound by no pledge given by executive officers.    You will have no reference, in making up your verdict, to the course which may, in any event, be taken then, on an application by Mr Conard for relief.    You will award to the plaintiffs such sum as you may think them entitled to receive from the defendant, according to the rules of law, without taking into view the supposed hardship on him.    The plaintiffs' recovery is not to be one dollar less than their legal right, though it might ruin the defendant; nor one dollar more, though you might think the public treasury would be opened for his relief."

To this charge the counsel for the defendant excepted, and the judge sealed a bill of exceptions set out at large in the transcript of the record.

A verdict was given for the plaintiffs, and the damages found were forty-two thousand five hundred and ninety-one dollars fifty-eight cents.    Judgment was rendered accordingly.

The defendant prosecuted a writ of error to this court.

The case was submitted to the court by Mr Taney, attorney general for the United States; and by Mr Ogden and Mr Sergeant for the defendants.

Mr Justice STORY delivered the opinion of the Court.

This case, upon all the leading points, presents the same facts and circumstances which were before this court in the

cases of Conard v. The Atlantic Insurance Company, 1 Peters's Sup. Rep. 386, and Conard v. Nicoll, 4 Peters's Sup. Rep. 291. Those cases underwent the most deliberate consideration of the court, and we are entirely satisfied with the doctrines maintained in them. The present case has been submitted without argument, and contains, at large, the charge of the learned judge who presided at the trial; a practice which this court has often disapproved, and deems incorrect, and for the continuation of which, nothing but the peculiar circumstances of the present class of cases could furnish any just apology.

The only points to which it is now necessary to advert, are those which are not embraced in the former cases, reported in the first and fourth volumes of Peters's Reports.

At the trial the plaintiffs offered to prove a demand of the collector, and a refusal by him after the levy was made to permit an entry and delivery of the goods at the custom house; but the counsel for the defendant objected to such proof, and the objection was overruled by the court, and the evidence given. And we are of opinion that this evidence was properly admitted. The ground of this objection must have been that the plaintiffs were not the legal owners and consignees of the goods, and so were not entitled to make an entry of them at the custom house, and to have a delivery of them after such entry. But to this the proper answer is given by the learned judge in his charge, in conformity to the prior decisions of this court. The plaintiffs were both owners and consignees. The consignment of the homeward cargo was to order; and the plaintiffs, in virtue of the assignment, and the indorsement and possession of the bills of lading and the other transactions stated in the case, became consignees as well as owners of the homeward cargo; and as such were already entitled to enter the same, and to have delivery thereof upon giving bonds in conformity with the provisions of the duty collection act of 1799, ch. 128. The thirty-sixth and sixty-second sections of that act clearly confer the right; and the proviso of the sixty-second section in nowise restrains it in cases like the present.

Another point, which appears to have been pressed by the counsel for the defendant at the trial, is that the United States had a lien upon, and a possession of the goods constituting the homeward cargo, at the time of their importation for the

[Conard v. The Pacific Insurance Company.]

amount of duties accruing thereon, and that the plaintiffs, not having an actual or constructive possession, could not maintain the present action and Harris v. Dennie, 3 Peters's Sup. Rep. 292, was relied on in support of this objection to the recovery: but that case has no bearing on the point. It decided no more, than that no creditor could, by any attachment or process, take the goods upon their importation out of the possession of the United States, until the lien of the United States for the duties accruing thereon was actually discharged, either by payment of the duties, or by giving security therefor, according to the requirements of law on the part of the importer. There is no doubt that if the importer has the general right and property in the goods, that right draws after it a constructive possession, and the master of the ship is but a bailee, maintaining that possession for his benefit. And there is no pretence to say that the property of the importer in the goods is divested by any possession subsequently taken by the United States after the arrival of the goods, for the purpose of maintaining their lien for duties. That possession is not adverse to the title of the importer; and indeed it may be properly deemed not so much an exclusive as a concurrent and mixed possession, for the joint benefit of the importer and of the United States. It leaves the importer's right to the immediate possession perfect, the moment the lien for the duties is discharged; and if he tenders the duties, or the proper security therefor, and the collector or other officer refuses the delivery of the goods, it is a tortious conversion of the property, for which an action of trespass or trover will lie. But this case does not even present that peculiarity; for the seizure of the goods was not under any authority to take possession in order to secure the duties, but it was made by the defendant, as marshal, to satisfy an execution against Edward Thomson, who had at the time no property or interest in the goods. The act was, therefore, the common case of an unlawful seizure and levy of one man's property to satisfy an execution against another man; and in such a case, trespass is clearly a fit and appropriate remedy.

Another point was, that the agreement of the 9th of October 1826 stated in the case, connected with the facts in evidence, amounted to a release or waiver by the plaintiffs, of all demand

[Conard v. The Pacific Insurance Company.]

for damages arising from the acts of the officers of the United States in taking possession of and detaining the goods in question. Upon this point it is unnecessary to say more than that the agreement itself repels any such notion of a release or waiver; and it was expressly overruled in Conard v. Nicoll, 4 Peters's Rep. 292.

Another point was as to the rule of damages; and here the learned judge in his charge seems to have laid down the very rule contended for by the defendant's counsel. The case not being one which called for vindictive or exemplary damages, he charged the jury (in conformity to the decision in Conard v. Nicoll), that the plaintiffs were entitled to recover such damages only, as they had proved themselves entitled to on account of the actual injury sustained by the seizure and detention of the goods: and in ascertaining what those damages were, he directed them that the plaintiffs had a right to recover the value of the goods (teas) at the time of the levy, with interest from the expiration of the usual credit on extensive sales. And, in the close of the charge, he farther directed them to deduct therefrom the net amount of the sales of the teas (they had been sold under the arrangements stipulated in the agreement of the 9th of October 1826), after payment of duties and charges of sale, and that the balance would be the amount to which the plaintiff would be entitled. In what manner the jury actually applied these directions in forming their verdict does not appear; and there is no reason to suppose that they have not been applied as favourably as the circumstances of the case justified.

Upon the whole, upon a careful review of the charge, and of the points upon which the counsel of the defendant requested the direction of the court to the jury, we can perceive no error in point of law applicable to the present case, which calls for the interposition of the corrective power of this court.

The judgment of the circuit court is therefore affirmed, together with interest upon the amount, at the rate of six per centum as additional damages and costs.