Sutliff, J.
The first exception taken in the assignment of errors,to the charge of the court to the jury, depends upon *462 the contract between the parties. The terms of the contract are not particularly expressed. The ticket is a convenient symbol to represent the fact that the bearer has paid to the company the agreed price for his conveyance upon the road, to the place thereby designated. The relative duties and rights of the parties as to the time and manner of the performance of the contract is, for the most part, implied. Each party is entitled, in its execution, to require from the other a reasonable interpretation of the contract, and a correspondent compliance with the obligations arising under it, and respectively devolving upon the parties.
The same reasonable construction of the contract of carrier and passenger, applicable to carriers of passengers by ships or steamers, and hacks or stage coaches, is applicable to carriers and passengers upon railroads. Upon payment of his passage money, and obtaining a general receipt, or passenger ticket, from an office, for his conveyance to a designated place upon the carrier’s line,' the passenger in either case is entitled to present his receipt or ticket for his passage, at any reasonable time, on any outgoing regular means of public conveyance of the carrier, and demand the execution of the contract on his part.
It then becomes the duty of the carrier to receive his baggage, to check or otherwise dispose of it with due care in safe custody, and furnish the passenger with proper and reasonable accommodations, for his transit over the line to the point of destination. But after the passenger has made his election as to time and means of conveyance, and has called upon, the carrier for performance, and the parties have, as in this case, entered mutually upon the performance of the conveyance, neither party can arbitrarily and without cause impose new and unreasonable conditions upon the execution of the contract.
It is unnecessary in this case to determine what the right of a passenger might be after getting upon a train, and even having delivered his baggage, for good cause, to leave the train, and have his baggage redelivered, and again embark upon another or later train. But we are clearly of the opin *463 ion that after so having made his election, and the train has started upon the road, and the passenger has delivered his ticket to the conductor, as in this case, he has no longer the right of a re-election of trains, while that train is, in a reasonable manner, in the performance of the undertaking of the carrier. A contrary doctrine would necessarily impose upon the carrier additional duties, the removal of baggage as well as the passenger from one train to another, and the consequent additional attention on the part of the company; also an increased risk of accidents, and a hinderanee and delay not contemplated by a reasonable interpretation of their undertaking.
In this case, the passenger was admitted as a passenger upon a freight train, and the complaint against the company is, not only that he was denied the right to leave the train upon which he had embarked, and take passage upon another train, under his contract, but that he was ejected from the second train after he had offered to pay his passage on that train. This presents a distinct question from that already considered. Its answer depends upon the duty of railroad companies, as common carriers, to carry passengers upon freight trains. The rule applicable to the case, must be one of fairness, and reasonable in its application, both to the public and the company. The strict care for the safety of the passenger, as well as a regard for his comfort and convenience, incumbent upon railroad companies, forbids that they should be required to admit passengers generally upon their freight trains in the same manner that it is incumbent upon them to do upon passenger trains. The number must necessarily be limited, and the circumstances somewhat special under which they are admitted at all; and the conditions and rules must be reasonable, and adapted to the case.
This class of trains is designed for the discharge of the duties of the company as common carrier of freight. And these duties .of the company are also incumbent upon them, and the proper discharge of the duties of hardly less importance to the public than those devolving upon the company as carrier of persons. Both classes of duties are found to be best *464 discharged to subserve public interest and convenience, as well as the interests of the company, by appropriating a distinct class of trains for the discharge of each class of these duties. It requires, to some extent, a different class of employees, as well as cars and other facilities, for each. The company may, for public or private convenience, if it see fit, to some extent, blend the discharge of the duties properly distinct, by taking freight, to a limited extent, upon passenger trains, or, by taking passengers, to a limited extent, upon freight trains. But this must necessarily be so done as not to interfere with the appropriate duties of such class of trains.
The evidence in this case tended to show that the company had adopted a rule to admit way passengers in the “ caboose car,” so called, attached for the convenience of freight trains, upon their paying their fare or procuring tickets before taking passage. We think this rule and regulation one which the company clearly had the right to make, and we perceive nothing in the case which would justify the conclusion, that the rule was an arbitrary and unreasonable one in its character. The limited number of passengers so admitted upon the freight train would not, probably, justify an equipment of a car upon the train with a passenger agent of those qualifications necessary to receive money and pay in change, to accommodate passengers, with convenience and safety for the passengers and company. Beside these, there are other objections, such as keeping the passenger receipts and accounts and those of the freight business apart and distinct, and other reasons, doubtless, which, from the nature and extent of its business, may readily be imagined, which may be weighty reasons with the company, to require such a rule.
But it is sufficient to say, that the bill of exceptions does not show that the railroad company had, in fact, any authorized agent for receiving fare; but it does appear that the person to whom the fare was offered expressly informed the plaintiff, not only that he was not authorized, but that he was prohibited, by the rules of the company, from receiving money for passenger fare, and from carrying unpaid passengers. *465 There is, then, no evidence showing that the plaintiff below paid, or offered to pay, either to the company or its authorized! agent, his passage fare. And, as he had not paid the legally constituted agents of the company, nor procured, as required by the regulations of the company, a passenger ticket for that train, he could not legally claim admittance on the train as a passenger.
What has already been said, necessarily ■ disposes of the case. But inasmuch as the remaining exceptions to the charge of the court are presented by the record, they may properly be here noticed.
It is insisted that the court erred in charging the jury that they might, in determining the amount of damages, as compensatory damages, have respect to attorney fees, and other necessary expenses of the plaintiff, in prosecuting his action.
In the case of Roberts v. Mason, 10 Ohio St. Rep. 277, which was an action for assault and battery, this court held that in an action for a tort characterized by fraud, malice or insult, in their estimate of compensatory damages, it was not improper for the jury to take into consideration, and include reasonable attorney fees for the prosecution of his action by the party injured. But, in the application of this rule, there will be found quite a contrariety.of opinion expressed in different courts, and the subject is not free from embarrassment. It is said that the application of the rule is never allowable in actions brought on contract. But it is in actions of tort, that the contrariety of opinion pronounced upon the subject, is to be found. And as the jury have the right to assess exemplary damages in actions of tort, for fraudulent, malicious or insolent acts, the rule can have no practical application, except in actions of tort, for unlawful acts, done by mistake, or without evil design, or under circumstances excusing, but not justifying the act.
In treating upon this subject, after referring to decisions-of different states, and in the Supreme Court of the United States, Mr. Sedgwick says, — “It is not easy to say what should be the general rule on the subject, though it is evident *466 that great incongruity has crept in. Nothing is more difficult, than to fix the precise limit to which society should go, in awarding reparation by means of its legal tribunals. Legal relief is, at best, extremely imperfect, and the charges of counsel are a very formidable item in those expenses which tend largely to reduce to the plaintiff the real benefit of his recovery; while, on the other hand, it may be said with great force, that the questions submitted to legal discussion, are often so vexed, that it is very doubtful whether the prevailing party is really entitled to complete reimbursement; and that if absolute indemnity were given, a great stimulus would be furnished to litigation. But at all events, the same rule should be applied to all cases that contain no elements of actual fraud, malice, or vexation; the plaintiff and defendant should be treated alike, and, whether the form of the action be ex contractu or ex delicto, the remuneration, as far as counsel fees is concerned, should be similar.” — Sedgwick on Damages, 101. And in the case of Pacific Ins. Co. v. Conard, 1 Bald. Rep. 145, Baldwin J., after referring to the various opinions upon the subject, expressed his disapprobation of the rule in a case of tort for compensatory damages, and refused to suffer attorney fees to be included; and his views seem to have been concurred in by the other members of the supreme court, on the final hearing of the case. 6 Peters 262.
On the other hand, in the case of Whipple v. Cumberland Manufacturing Co. 2 Story’s Rep. 661, in an action brought to recover damages for flowing back-water upon the plaintiff’s lands, Judge Story instructed the jury that although no malice was proved, “ that for the purpose of giving full indemnity, they might take into consideration such expenses of fees to counsel, and such other necessary expenses as they might think were properly and fairly incurred, in ascertaining by their verdict the amount of damage which the plaintiff was justly entitled to recover in the case.”
But in the case of Stimpson v. The Railroads, 1 Wallace R. 164, Grier, J., considers to some extent the conflicting opinions expressed in relation to the rule, and denies its correctness. He insists that the rule only existed in the civil *467 law, and found no support in principles of the common law. And he accounts for the rule haying been recognized by Judge Story and other eminent judges, by accepting as authority decisions of courts of admiralty which proceed according to the principles of the civil law, and so award costs at the discretion of the judge, requiring the parties to pay costs to such extent as the judge may regard right and equitable, according to the circumstances attending each case.
And the argument is certainly one of much force in ac counting for the introduction to the rule which is perfectly consonant with this rule of the civil law in awarding costs as part of the remedy, if it be true that it can not find any support at common law as an item, of costs, for which the court could render judgment. Indeed, we know that at common law the parties were never entitled to judgment for costs, they were only entitled to judgment for their right or claim, for which the action was brought, or “ to go hence without day,” as the case might be. But at common law, if the plaintiff failed to maintain his alleged cause of action, he was amerced pro falso clamore. And in case the plaintiff sustained his cause of action, and obtained judgment, the defendant stood thereby convicted of the wrong or delinquency alleged against him, and condemned to make reparation for the wrong, or the restoration of the plaintiff’s right, the object of the action; but in such case the defendant was never, at common law, amerced; the defendant was said to be in misericordia for his unjust detention of the plaintiff’s right, and, therefore, was not punished with the expensa litis. And however unequal the rule may appear to have been between the parties litigant, in relation to the incidental costs of the litigation, it is said that no other rule prevailed at common law; and that it was to cure the apparent unreasonableness of this exemption from liability for costs on the part of the defendant, and to make the rule equal between the parties, that the statute of Gloucester (6 Ed. 1 Ch. 1) was passed. That statute (1278) provided, “ And whereas before-time damages were not taxed but to the value of the issues of the land, it is provided that the demandant may recover against the tenant the *468 costs of his writ purchased, together with the damages above said (sec. 1), and this act shall hold place in all cases where the party is to recover damages. And every person from henceforth shall be compelled to render damages where the land is recovered against him upon his own intrusion or his own act.”
This, it has been said, “ was the original of costs de incremento” and that under this statute, “ when the damages were found by the jury, the judges held themselves obliged to tax the moderate fees of counsel and attorneys that attended the cause.” “And this was done in all real actions in which there were damages at common law, and also in all personal actions; for even in an action of debt, there are damages given for the unjust detention.” 6 Bac. Ab. 485.
But it must be confessed that there is a degree of uncertainty as to the fact of the statute referred to being the origin of the rule of assessing costs against defendants. For while it is said in Bacon’s Abridgement, and by other writers of equal authority, that there were no costs at common law, we are informed that, “ although costs were never given at common law eo nomine, yet in reality they were always included in the quantum of damages, in those actions where damages were given, the form of which entry may possibly have arisen from the above mentioned practice.” 3 Bla. 399, 2 Inst. 288.
And it is said by Lord Chief Baron Gilbert, that the justices in eyre were wont at their iters, before the statute of Gloucester, to assess the costs of the plaintiff where he prevailed, at a reasonable sum, exclusive of, and unblended with the damages which he recovered, and that this custom prevailed till the introduction of the modern justices of assize and nisiprius; at which time it became necessary that the costs should be taxed by the court above, and not by the judges on their circuits. Gilbert’s Hist. C. P. 266.
An additional argument against the proposition that the origin of the rule must have been the civil and not the common law, is the fact that even the statute of Gloucester did not govern the courts in their taxation of costs, as do our *469 statutes authorizing costs. The amount of the costs was not regulated by the statute so as to prevent the court exercising a somewhat arbitrary discretion, the same as in the assessment of other fines. In speaking of final judgments, we are told that, in cases where the judgment is for the plaintiff, it was to the effect “that he recover the remedy he sued for;” and that it was also considered that the defendant be either amerced for his willful delay of justice, in not immediately obeying the king’s writ by rendering the plaintiff his due, or be taken up (capiatur) till he pays a fine to the king for the public misdemeanor, which is coupled with the private injury, in all cases of force, of falsehood in denying his own deed, or of unjustly claiming property in replevin, etc. “ But if judgment for the defendant, under like circumstances, the plaintiff may also, in like manner, be fined; but in most cases, he and his pledges are (nominally) adjudged to be amerced for his false claim. And formerly, where the plaintiff, a pauper, failed in his suit, and was nonsuited, Blackstone informs us that it was usual for the court to give him his election to be whipped, or pay the costs. 2 Bla. 399. But if it be true that, previous to the statute of Gloucester, costs, while not given eo nomine at common law, were included in the quantum of damages, it is difficult to perceive the want of any authority at common law in favor of the rule; and especially where, even under the statute, such expenses as counsel and attorney fees were, in England, regarded as items of cost to be assessed against the delinquent party.
But the subject is one by no means free from doubt. While, as we have seen, the rule has been clearly recognized in some states and favored by learned jurists, it is rejected by others of equal respectability.
But it is unnecessary to here express an opinion as to the propriety of extending the rule to any case beyond a trespass of the character to which we have allowed its application, one in which exemplary damages might have been allowed.
We think, however, the district court undoubtedly erred in their instruction to the jury, that it was necessary the plain *470 tiff should recover the amount of one hundred dollars, in order to entitle him to recover costs. The judgment to be rendered was a duty belonging exclusively to the court, and with the discharge of which the jury had no concern. • Nor should their true finding of the issues submitted to them, and the true amount of damages, be at all disturbed or qualified by such a consideration. Indeed, if they had come to the knowledge of such a fact upon the trial, it would have been very proper for the court to have cautioned them against its influence upon their verdict.
For the errors indicated in the instructions of the court to the jury, the judgment of the district court must be reversed, and the petition in the original action dismissed, at the cost of the defendant in error.

Judgment accordingly.

Scott, C.J„ and Puck, G-holson and Brinkerhoee, JJ., concurred.