PHILIP KUSSELL ET AL.

v.

JACOB JZEVOR.

1.  TRESPASS—EXECUTION OF LEGAL PROCESS—EXEMPLARY DAMAGES.—Where the only evidence in the case as to the acts of the defendants was that they took the goods under a writ of attachment, believing them to be the goods of their debtor, and afterwards refused to deliver them up on a writ of replevin, an instruction to the effect that if the jury believe the defendants willfully, wantonly and maliciously committed such trespass, then punitive damages may be awarded, is erroneous.   Appellants were proceeding in an orderly manner to attach goods which they believed, from the surrounding circumstances, belonged to their debtor, and they are not chargeable with malice, through ignorance of the fact of such ownership being in another.

2.  SUBSEQUENT REFUSAL TO SURRENDER ON DEMAND.—A mere refusal to surrender such goods to an officer armed with a writ of replevin does not imply malice.   Having, as they honestly believed, the better and legal right to the property, they were not bound to aid the officer in taking the goods from them.

3.  RULE OF DAMAGES.—The verdict of the jury cannot be supported under a claim of damage and loss of business and good will to the plaintiff by reason of defendants' acts.   The bill of sale under which plaintiff claims does not purport to convey any interest in the building, lease, good will or business, hence the actual damage suffered was the value of the goods at the time they were taken, with interest thereon to the time of verdict rendered.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. WILLIAM H. KING, for appellants; that admitting the sale to appellee was *bona fide*, the right to the goods depends upon the fact as to which first obtained actual possession, appellants or appellee, cited Burnell v. Robertson, 5 Gilm. 282; Ketchum v. Watson, 24 Ill. 591.

The record fails to disclose any wantonness or aggravated conduct on the part of appellants, and punitive damages should not have been allowed: Conrad v. Pacific Ins. Co. 6 Pet. 262; Beveridge v. Rawson, 51 Ill. 504; City of Chicago v. Martin, 49 Ill. 241; Pierce v. Millay, 44 Ill. 189; Kennedy v. North Mo. R. R. Co. 36 Mo. 351.

There was no evidence to justify the court in instructing the jury that they might find exemplary damages: Waldron v. Marcier, 82 Ill. 550; Wenger v. Calder, 78 Ill. 275; Engle v. Jones, 51 Mo. 316; Franz v. Hilterbrand, 45 Mo. 121; Rose v. Story, 1 Pa. St. 190; Brown v. Allen, 35 Iowa, 306; Bates v. Clark, 5 Otto, 204.

The damages allowed were grossly excessive: Sadler v. Bean, 38 Iowa, 684; Cutler v. Smith, 57 Ill. 252; Tripp v. Gronner, 60 Ill. 474; Becker v. Dupree, 75 Ill. 167.

Messrs. BRANDT & HOFFMAN, for appellee; that the damages are not excessive, cited Field on Damages, 56; St. L. V. & S. H. R. R. v. Capps, 67 Ill. 607; Lawrence v. Hagerman, 56 Ill. 68; Jasper v. Purnell, 67 Ill. 358; Johnson v. Camp, 51 Ill. 219; Best v. Allen, 30 Ill. 30: Hawk v. Ridgway, 33 Ill. 473; Farwell v. Warren, 51 Ill. 467; Coffin v. Coffin, 4 Mass. 41; McNamara v. King, 2 Gilm. 432; Ross v. Innis, 35 Ill. 488.

PLEASANTS, J.   The facts proved in this case, so far as need be stated, are these:   For some months prior and up to May 4, 1876, one Joseph Weseley had been keeping a small grocery at No. 17 Crittenden street, in the city of Chicago, and was then indebted to Kussel Bros., two of the appellants, who were wholesale dealers, on account for goods, in the sum of $105.39.

On that day his stock was levied on under an execution in favor of a third party, and his store locked up and put in charge of a custodian.   On the morning of the 9th, at the office of the justice who had issued the execution, he made a bill of sale of "the stock, fixtures and property contained in the store," for $275, to the appellee, and the latter, with his consent, then and there paid the price to the plaintiff's attorney, who retained the amount of the judgment, and paid over the residue to Weseley.   Appellee immediately presented his bill of sale, with an order for possession to the custodian, who thereupon unlocked the door and delivered to him the key.   He and his wife went in, sold a pound of sugar to a customer, and then, for some unexplained reason, disappeared, leaving no one in the store except a lad who had previously been there in the employ of Weseley.   On the same morning, and shortly before the execution of the bill of sale, the Kussel Brothers sued out from another justice a writ of attachment against the property of Weseley, which was delivered to constable Klyn, the other appellant, to execute.   Christian Kussel accompanied him, to point out the goods.   Finding the door locked, they crossed the street to a saloon in search of Weseley, but did not see him. Observing a few minutes afterward that the store was open, they returned to it, and being informed by the custodian, whom they met near the door, that "he was through with it," went in, and seeing no one there but the lad before mentioned, who was recognized by Kussel as the clerk or employee of Weseley, at once proceeded to levy upon and load up the goods.   While so engaged appellee's wife came in, followed by her husband, who claimed the property and exhibited his bill of sale; but Kussel and the constable disregarded it, and went on with the levy. The appellee being a Pole, and unable to speak or understand English readily, went out, and soon returned with one Labuy, a fellow countryman, who also informed them of appellee's claim that he had bought and paid for the property, and on his behalf forbade their taking it.   Notwithstanding this, they still went on, and removed to the store of Kussel Brothers two wagon loads of goods, worth from $140 to $168.   Labuy accompanied them, and saw that everything taken was properly

counted or weighed and minuted. On the next day appellee
sued out a writ of replevin, and Labuy, with the officer having
it, demanded the goods of appellants, who replied: "Look the
store through, and if you can find them, why, take them."
They searched, but never found or recovered them. In due
time Kussel Bros. obtained a judgment for the amount of their
claim in the attachment suit against Weseley, and execution
thereon was returned satisfied. At the time of that trial the
goods were again demanded of appellants, who asked a little
time to consult their attorney, and shortly afterwards refused
to surrender them. Thereupon the replevin suit was dismissed,
and this, in trespass, brought.

Upon this state of facts the court below gave to the jury,
among others, the following instruction:

"If the jury believe from the evidence that the defendants
committed the trespasses alleged in the declaration, or some of
them, and thereby injured and damaged the plaintiff, then the
jury should find the defendants guilty, and assess the plain-
tiff's damages; and if the jury shall believe from the evidence
that the defendants willfully, wantonly, and maliciously com-
mitted such trespasses as the jury shall believe from the
evidence they did commit, if any, then the jury are instructed
as matter of law that the damages are not necessarily limited
by any damages which the jury may believe from the evidence
that the plaintiff has actually sustained in the premises, but
the jury may, in such case, give a further sum as smart money,
or a punishment to the defendants, and such as under all the
circumstances the jury shall deem just."

A verdict of guilty was returned, and the plaintiff's damages
thereby assessed at $1,150, which the court refused to set aside,
but entered judgment accordingly, and the defendants appealed.

The effort of counsel here to support this verdict upon the
alleged ground that plaintiff was poor, had invested all his means
in this store, and was unable to replace the stock taken, and that
the greatest element of his actual damage was the breaking up
and destruction of his business, was almost a fatal admission
against it. There was not the slightest proof of either of the
facts so assumed. An offer was made on the trial to show the

value of the good will and business of this store, but it was refused by the court, and rightly, for the reason, we presume, that plaintiff had shown no interest in it. The bill of sale did not purport to convey any interest in the building, lease, good will or business. It follows that the value of the goods at the time they were taken, with interest thereon to the time of verdict rendered, was the full amount of actual damage that he could claim. Upon a liberal view of all the testimony in relation to it, that value did not exceed $160.

It therefore struck the members of this court, alike and at first blush, that even if this were a case for exemplary damages the amount given by the jury was grossly unreasonable and excessive.

But we discover in the record no evidence tending to show any willfulness, wantonness or malice on the part of the defendants—that is, any act done at their mere will without regard to reason or right, and with a disposition to oppress or injure the plaintiff.

The only circumstances relied on as showing it are, first, that they persisted in taking the goods after notice of plaintiff's claim and against his protest, and second, that afterwards upon demand for them on a writ of replevin, they declined to deliver them up or tell the officer where they could be found.

But the claim of which they had notice was only that plaintiff had bought and paid for them, not that he had ever been in possession of them or of the store or its key, before their attachment was levied. They found the store locked and in charge of a custodian; a few minutes later they saw it open and apparently again in possession of Weseley by his clerk. It does not appear that at that time they had received any information respecting appellee or his relations to the property, and when he came upon the scene to protest against what they were doing, they may well have supposed it was his first appearance there. They were creditors of Weseley, duly armed with process against his estate which they were executing in a manner that was orderly and proper, and upon the facts, as they believed them, would have been, notwithstanding plaintiff's purchase, payment and bill of sale, in the due exercise of their lawful

right. Burnell v. Robertson, 5 Gilm. 282. Such an act, although they were mistaken as to the facts and really trespassers, is to be widely distinguished from those shown in Farwell v. Warren, 51 Ill. 467; Jasper v. Purnell, 67 Ill. 358, and other cases in which the parties, proceeding with the strong hand and without legal process or warrant, were violating the law even upon their own view of the facts. Every man is bound and presumed to know the law as applicable to given facts, and therefore every voluntary violation of it, under such circumstances, may well be presumed to be willful or reckless. But no man is penally bound or presumed to know the facts, and if he proceeds in a manner that would be lawful if they were as they reasonably appear and he honestly believes them to be, then although he be mistaken he is not, upon that fact alone, chargeable with malice nor liable for more than the actual damages. Conard v. The Pacific Ins. Co. 6 Peters 262; Beveridge v. Rawson, 51 Ill. 504.

It is said that their refusal to surrender or point out the goods to the officer who held the writ of replevin, was a defiance of that officer and of the mandate of his writ, and a contempt of the court that issued it.

We do not so understand it. The mandate of the writ was addressed to the officer, not to the defendants.

It is not pretended that they resisted him or obstructed its execution, and having the better and legal right to the property upon what they reasonably and honestly believed to be the facts, they were not bound to aid him in taking it from them.

The instruction complained of was unsupported by any evidence, and therefore ought not to have been given, nor the motion to set aside the verdict and grant a new trial overruled. For these errors the judgment is reversed and the cause remanded.

Reversed and remanded.