UNITED STATES of America

v.

LEBANON WOOLEN MILLS COR-
PORATION et al.

Civ. A. No. 2287.

United States District Court
D. New Hampshire.

July 9, 1964.

Louis M. Janelle, U. S. Atty., Concord, N. H., for plaintiff.

Robert H. Reno, Concord, N. H., for John C. Cone, receiver.

Shulins & Duncan, Richard C. Duncan, Newport, N. H., for Miller Auto Co., Inc.

CONNOR, District Judge.

This is a motion wherein Miller Auto Company, Inc., seeks a judgment granting its conditional sales contract priority over a federal tax lien, and an order permitting it to prove its claim as a secured creditor of Lebanon Woolen Mills Corporation.

From the representations at the hearing and from the memoranda supplied thereafter, it appears that both Miller and the Government are in agreement as to the following facts. On October 4, 1961, Miller sold to Lebanon Woolen Mills Corporation a 1961 Pontiac Catalina Vista sedan automobile, Serial #361L–17631, under a conditional sales agreement which was not recorded until February 23, 1962. Sometime during October, 1961, Miller made an attempt to record the conditional sales contract in Lebanon, New Hampshire, but for some reason the City Clerk of the City of Lebanon refused to record the contract.

The complaint alleges, and it is nowhere disputed by Miller, that the Commissioner of Internal Revenue made assessments against Lebanon Woolen Mills Corporation for income taxes, penalties, and interest, on January 24, 1962, and that notice and demand was made and refused two days later. The complaint further alleges that the District Director thereafter "duly filed notices of the tax lien * * * in the proper offices as provided by law." A Receiver for Lebanon Woolen Mills Corporation was appointed by order of this court on February 14, 1962.

The question to be determined on the above set of facts is whether the security interest of a conditional vendor is superior to a lien for federal taxes against the vendee, assessed and filed subsequent to the execution of the conditional sales contract, but prior to the filing of that contract. For the purposes of the present motion, no question is raised as to the validity of the federal tax lien or as to the amount claimed to be due under the conditional sales contract, or as to the priorities of other creditors.

■■ In cases involving a contest as to the priority as between a federal tax lien and a lien or other interest arising under state law, there are, generally speaking, two main areas of inquiry. The first is to determine the nature and extent of the interest arising under state law; this is a question of state law. See Poe v. Seaborn, 282 U.S. 101, 110, 51 S.Ct. 58, 75 L.Ed. 239 (1930); Campbell v. Bagley, 276 F.2d 28 (5th Cir. 1960). The second is to determine the priority as between the state created interest and the federal tax lien; this is a federal question. E. g., United States v. Security Trust & Savings Bank, 340 U.S. 47, 49–50, 71 S.Ct. 111, 95 L.Ed. 53 (1950).

■ As a matter of state law, the conditional sales contract in question, though unfiled, was effective to create a security interest according to its terms between the parties. NH RSA 382–A:9–201. Although the form of the agreement prescribed the retention of title in the conditional vendor, Miller, it would be more appropriate, under the terminology of the Uniform Commercial Code, NH RSA ch. 382–A, to consider Miller as the holder of a purchase money security interest and to consider his status as analogous to that of a chattel mortgagee.

■ Due to the insolvency of the taxpayer corporation here involved, the question of priority is determined, in the first instance, by 31 U.S.C. § 191 which provides that "whenever any person indebted to the United States is insolvent, * * * the debts due to the United States shall be first satisfied; * * *." "Debts," as used in this section, includes federal taxes. Price v. United States, 269 U.S. 492, 46 S.Ct. 180, 70 L.Ed. 373 (1926).

■ Despite the seemingly absolute priority thus attaching to federal tax liens in insolvency situations, it has long been recognized that certain classes of prior transfers and interests are exempt from the operation of the present statute and its predecessors. Thus, for example, a prior conveyance or mortgage executed by the taxpayer is not affected by the "absolute" priority of a federal tax lien or other subsequent debt owing to the United States; and, despite recent dicta of the United States Supreme Court to the contrary, the same may well be true of other classes of prior specific and perfected liens. See Savings and Loan Society v. Multnomah County, 169 U.S. 421, 428, 18 S.Ct. 392, 42 L.Ed. 803 (1898); Brent v. Bank of Washington, 35 U.S. (10 Pet.) 596, 611–612, 9 L.Ed. 547 (1836); United States v. Hack, 33 U.S. (8 Pet.) 271, 8 L.Ed. 941 (1834); Conard v. Pacific Insurance Co., 31 U.S. (6 Pet.) 262, 8 L.Ed. 392 (1832); Conard v. Nicoll, 29 U.S. (4 Pet.) 291, 7 L.Ed. 862 (1830); Conard v. Atlantic Insurance Co., 26 U.S. (1 Pet.) 386, 437–450, 7 L.Ed. 189 (1828); Thelusson v. Smith, 15 U.S. (2 Wheat.) 396, 426, 4 L.Ed. 271 (1817); United States v. Hooe, 7 U.S. (3 Cranch) 73, 2 L.Ed. 370 (1805); United States v. Fisher, 6 U.S. (2 Cranch) 358, 390, 395, 2 L.Ed. 304 (1805); United States v. Bond, 279 F.2d

837, 841 (4th Cir. 1960), cert. denied 364 U.S. 895, 81 S.Ct. 220, 5 L.Ed.2d 189 (1960); Exchange Bank & Trust Co. v. Tubbs Mfg. Co., 246 F.2d 141 (5th Cir. 1957), cert. denied, City of Dallas, Texas v. Tubbs, 355 U.S. 868, 78 S.Ct. 118, 2 L.Ed.2d 75 (1957); United States v. Atlantic Municipal Corp., 212 F.2d 709 (5th Cir. 1954). The rationale of these cases appears to be that to the extent that the taxpayer has conveyed, mortgaged, or in any other way alienated a property interest, that property interest is no longer his and cannot be made subject to a subsequent lien for taxes owed by him.

■ The security interest held by Miller in the present case appears to fit well within this judicially maintained exception. Whether the vendee taxpayer corporation be deemed to have mortgaged away a property interest in the automobile or never to have received the full property interest in the automobile, it is clear that the conditional sales contract operated to create in Miller a distinct and separate security interest. To the extent of this security interest, the automobile has been alienated from the assets of the taxpayer vendee and a lien for the unpaid taxes of the vendee cannot attach to it. Accordingly, the prior purchase money security interest of Miller takes priority over the subsequent attaching federal tax liens.

Having thus indicated the decision of the question at issue in this case, and the basis for that decision, it might also be well, in light of the welter of sometimes confusing and inconsistent precedent in this area, to indicate what has not been the basis of decision.

■ One possible ground for decision which, at first glance, seems appealing, is found in 26 U.S.C. § 6323(a) which provides that a federal tax lien "shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate * * *." Although the broad language of the statute would appear to apply to all mortgage-like agreements regardless of the time when they were executed, there are several reasons why this statutory provision has not been singled out as the basis of the decision herein.

■■ First, section 6323 is designed to protect persons who acquire their interest during the time gap between the attaching of the federal tax lien and the recording thereof;[1] Miller Auto, however, obtained its interest prior to the attaching of the federal tax lien, prior to the gap.

Second, as a pre-gap transaction, the conditional sales agreement here is already fully protected.[2]

Third, to apply section 6323 to a pre-gap transaction is to run the risk of inflicting upon a prior and superior interest otherwise fully protected by law, the same infirmities of strict and narrow statutory construction which are visited upon gap interests whose sole hope for gaining priority is qualification under one of the four magic categories denominated in the statute.

Fourth, there is in the recent case of United States v. Pioneer American Insurance Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963), dictum (with which this court does not wish to express its agreement hereby) to the effect that in order for a mortgage to qualify for protection under section 6323, it must have the same degree of choateness which is supposedly[3] required of a pre-gap

---

1. Section 6323 was enacted by Congress to remedy the harsh rule of United States v. Snyder, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705 (1893), which allowed "secret" tax liens to gain priority over purchasers and mortgagees acquiring their interest between the attaching and the filing of the lien. United States v. Union Central Life Insurance Co., 368 U.S. 291, 294–295, 82 S.Ct. 349, 7 L.Ed.2d 294 (1961).

2. See, e. g., Savings and Loan Society v. Multnomah County, supra, 169 U.S. at 428, 18 S.Ct. 392; Conard v. Atlantic Insurance Co., supra, 26 U.S. at 441.

3. Pioneer's intrusion of the language of "choateness" into the mortgage area appears to be a very novel approach, indeed, and embodies what is, perhaps, a conclusion unnecessarily drawn from the

mortgage.[4] Pioneer thus emphasizes that the one true purpose of section 6323 is to protect gap mortgages, and not to go about offering protection to pre-gap mortgages which are already fully protected.

Another decisional path which the court has not followed, is that described in United States v. Anders Contracting Co., 111 F.Supp. 700 (W.D.S.C.1953), a case granting priority over a federal tax lien to an unfiled conditional sales agreement under circumstances similar to those in the case at bar. The rationale of Anders stressed the theory of retention of title; since the conditional vendee never received title to the truck, the lien for the vendee's unpaid taxes could not attach to the truck. This court is reluctant to rest the decision herein on retained title theory, however, in view of NH RSA 382–A:9–202 which provides:

"Each provision of this Article with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor."

While the annotation to this section bears out the sensible suggestion that resort to title theory or lien theory may be had in contexts not governed primarily by the Code, such resort seems unnecessary here. Miller possesses a valid security interest, complete as against his vendee; the security interest was executed prior to the attaching of the tax liens and, therefore, comes within the, well recognized exception to the Government's statutory priority. This is not to say that analysis in terms of title theory would be altogether improper; it is simply that diagnosis in terms of "retained title" (1) may appear to some as a salvific saving pretense to rescue an otherwise sickly security interest; (2) may serve to obscure the simple substantial reality of the present priority structure, which is that a prior security interest, complete as against the debtor, prevails over a federal tax lien subsequently attaching to the debtor's property; and

ambiguity latent in United States v. R. F. Ball Construction Co., 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510 (1958). The majority in Ball never reveals its opinion as to the nature of the claim involved. (The dissenting opinion, in turn, presents an interesting example of the difficulties encountered by pre-gap interests when the strictures of 26 U.S.C. § 6323 are unnecessarily applied to them.)

The substance of the present day notion of choateness was set forth long ago in Thelusson v. Smith, supra, 15 U.S. at 426; and it was recognized at that time not only that a properly executed mortgage embodied the substance of these requirements, but also that a mortgage by its very nature is something quite apart from other liens to which the tests of perfection are applied. Thelusson v. Smith, supra at 441. It is clear that even the modern formulations of perfection, now duly dubbed "choateness," simply list characteristics which are inherent in any properly executed mortgage. See, e. g., United States v. City of New Britain, 347 U.S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520 (1954). Although the amount due under a mortgage to secure future advances may of necessity be uncertain, this is only an apparent lack of specificity. The property covered by the mortgage is not only specific, but specifically isolated from the debtor's other assets; and the amount so secured is thus specific as to its maximum. Cf. United States v. R. F. Ball Construction Co., supra at 355 U.S. 593–594, 78 S.Ct. 442 (dissenting opinion).

4. In Pioneer, the priority of the principal debt secured by the mortgage was unchallenged; the holding was that the claim for attorneys' fees, also secured by the mortgage but incurred in litigation with respect to the mortgage subsequent to the attachment and filing of the federal tax lien, were subordinate to the intervening tax lien. It is herewith submitted that the holding in Pioneer should be narrowly construed as limited to the facts of that case. To construe the holding in Pioneer as generally subordinating mortgages given to secure future advances or debts not precisely ascertained, would be to vary drastically from traditional doctrine, e. g., Conard v. Atlantic Insurance Co., supra, 26 U.S. at 448, and to unsettle unnecessarily a significant sector of present day practice in the field of secured financing. Cf. United States v. R. F. Ball Construction Co., 355 U.S. 587, 593–594, 78 S.Ct. 442 (1958) (dissenting opinion).

(3) may give the misleading impression that technicalities are more important than substance, despite the salutary trend championed by the Uniform Commercial Code.

A further approach which is not adopted here, is that of Gauvey v. United States, 291 F.2d 42 (8th Cir. 1961), a case which likewise upheld the priority of a prior unfiled conditional sales agreement over a subsequent tax lien. Gauvey applied section 6323 to the pre-gap conditional sale, found that a conditional sale qualified as a "mortgage" for the purposes of the statute, and held that since section 6323 said nothing about the filing of a mortgage, such filing was unnecessary. Were the conditional sales agreement in the present case a gap transaction rather than a pre-gap transaction, then the analysis of Gauvey would probably be adopted here. But the security interest here involved is clearly of the pre-gap variety, and, while analogous to the interest created by a chattel mortgage, is fully able to stand on its own feet, under the cases cited, and claim its rightful priority without further change of name. There appears no reason why it must be cloaked in a foreign garment and be made to pass muster before a statutory credentials committee which is exceeding the bounds of its authority.

An additional factor which is not considered controlling here is the failure of Miller to record the conditional sales agreement prior to the time when the tax lien attached and was filed. As counsel for the Government and for the Receiver have urged that failure to effect timely recordation should defeat Miller's claim to priority, detailed attention will be given here to the reasons why, in the court's opinion, the issue of Miller's recordation, regardless of the time sequence, is irrelevant.

Few cases dealing with similar situations have been called to the attention of the court. Some, e. g., Anders and Gauvey, after giving thought to the problem, concluded that compliance with the state recording statute was unnecessary; oth-ers, e. g., Mason City and Clear Lake R. R. v. Imperial Seed Company, 152 F. Supp. 145 (N.D.Iowa 1957) simply applied the state recording statute to defeat the security interest, with little or no discussion as to why such a statute should be relevant at all.

Under the Uniform Commercial Code, as adopted by New Hampshire, NH RSA ch. 382–A, the recording requirements neither alter nor perfect the security arrangement as between obligor and obligee, NH RSA 382–A:9–201, but seek in effect to determine the priority of such an arrangement with respect to third party interests, NH RSA 382–A:9–301, 302(1) (d) and 303.

But it must be remembered that the matter of priorities with respect to a federal tax lien is a federal question. United States v. Security Trust & Savings Bank, supra. This means that federal statutes and federal decisional law is, in the first instance, controlling; resort is had to the implements of state law only insofar as controlling federal authority dictates or sound federal policy counsels. This may mean that in a given situation a state recording statute would, as a matter of federal law, be found applicable; but its application would stem not from its own weight, not from its own authority, and not from its own sheer physical presence in the compilation of state statutes. Its application would result either from the directive of controlling federal authority or from the urgings of prudent federal tax policy.

Turning to the concrete problem presented in the present case, no question about the priority of Miller's security interest would have arisen, were it not for the fact that Miller failed to record until after the filing of the tax lien. Does failure to comply with a state recording statute destroy the priority otherwise attaching to a prior complete security interest? This court has discovered no controlling statute or case which would so urge. Should compliance with the recording statute be required as a

necessary step in preserving such a priority, as a matter of sound federal policy? For the following reasons, this court thinks not.

First, in all the cases, briefs, and memoranda laid before the court, no cogent argument has been advanced explaining how sound federal policy is advanced by demolishing the priority of a prior security agreement, valid and complete as between the parties, for failure to comply with the technicalities of a state recording statute. Not even the broad shot-gun arguments which are sometimes advanced in terms and purposes no more particular than "protecting the federal revenues," would, it is hoped, extend so far.

Second, it is not at all clear that the framers of the Uniform Commercial Code intended that the recording strictures, apparently designed to police conflicting private claims, should be extended to hamstring otherwise valid prior security interests in their chance encounters with federal tax liens.

Third, the reasons urging compliance with filing requirements in the situations clearly envisioned by the Code and governed by its provisions, do not urge compliance with filing requirements here. In order to create and preserve that atmosphere of confident reliance so necessary for stable commercial intercourse, both the courts and the legislatures have had to develop doctrines and procedures to protect the interests of bona fide purchasers, reliance creditors, and the like. Recording statutes are a typical result of these efforts to protect reliance interests. The federal tax lien, however, is not the product of a reliance interest; taxes are assessed and liens attach irrespective of the amount of property the taxpayer actually or apparently possesses.

It is recognized, of course, that non-reliance creditors, as well as reliance creditors, are often able to secure the protection afforded by the recording statutes. Why then should the Government fare less well than these other non-reliance creditors? One reason is that the statutory protection of non-reliance creditors is itself somewhat of an anomaly; and the court has encountered no cogent argument for extending this anomaly to include federal tax liens as well. Additional reasons appear below.

Fourth, the Government not only does not rely upon apparent ownership in assessing and collecting its taxes, but also ought not to be entitled to take advantage of apparent ownership when to do so would result in the enforcement of a tax lien against the property of one whose tax liabilities have already been satisfied. Even the most solicitous regard for the protection of federal revenues does not counsel a policy of tax collection at the expense of non-liable third parties. As the representative of the Internal Revenue Service so succinctly stated at a subsequent hearing in which the present matter was involved: [5]

> "I think we can take any property that belonged to the debtor. We can go that far. We wouldn't want to take anyone else's property. But if the property belonged to the debtor and it was only subject to an inchoate lien, why we could take it."

Applying this to the present case, it appears that Miller's security interest was complete and valid as against the debtor, and to this extent the automobile did not belong to the debtor. To enforce the present tax lien against the entire proceeds of the automobile without regard for the security interest of Miller, would be to take sombody else's property. See Raffaele v. Granger, 196 F.2d 620 (3rd Cir. 1952).

Fifth, it is a recognized general principle of federal taxation that the interest of the Government in a taxpayer's property extends no further than the interest of the taxpayer himself; the Government can assert no rights with respect to the property which could not have been asserted by the taxpayer. Stuart v. Willis, 244 F.2d 925 (9th Cir. 1957); United States v. Winnett, 165

F.2d 149 (9th Cir. 1947); Karno-Smith Co. v. Maloney, 112 F.2d 690 (3rd Cir. 1940). See also United States v. First National City Bank, 2 Cir., 321 F.2d 14, aff'd. on rehearing, 325 F.2d 1020 (2nd Cir. 1964) (appeal pending). This general rule is subject, no doubt, to certain exceptions and to the general modification that limiting interests of third parties must achieve a certain degree of definiteness and particularity in order to become effective against the Government. Prior mortgages and conveyances by their very nature have traditionally been considered to embody these characteristics; and perhaps this explains why they have remained relative strangers to the developments which have taken place since the resurrection of the word "choate" from the catacombs of linguistic disuse, and its subsequent elevation to a position of exalted reverence in the lexicons of tax lienors and lienees alike.

■■■ The conditional sales agreement here in dispute clearly delineated the extent of Miller's interest in the specific property of the taxpayer corporation. No fraud, no juggling of assets was involved. The rights of the corporation in the automobile purchased were subordinate to the security interest of Miller. The Government should succeed to no higher rights. Cf. United States v. Durham Lumber Co., 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960).

■■■ Sixth, the perfection of a sale or mortgage envisioned by state recording statutes differs from the perfection required of competing interests in the tax lien area. Compliance with a recording statute achieves perfection of the recorded instrument with respect to third parties. The Government is primarily concerned, however, not with perfection as against third parties, but, rather, with perfection as against the debtor whose property is subjected to the lien. As discussed above, the interest of the Government is in the property of the person who owes the tax; the tax may be collected only from the delinquent taxpayer in question or from property belonging to him. See Raffaele v. Granger, supra. It is not always a simple matter, however, to determine what property belongs to the debtor and what interests rightfully belong to others. In order to afford a certain amount of protection to the collection of federal revenues and to facilitate the proper allocation of property interests involved, the federal courts have insisted that an intervening party claiming ownership of a property interest about to be subjected to the enforcement of taxes owing by the tax debtor, must establish that his asserted interest has been sufficiently segregated from the assets of the debtor or has become sufficiently earmarked among them. The word choateness has been used in recent years to describe that quality of completeness, perfection, and specificity of which an intervenor's interest must partake in order not to be considered a part of the debtor's property and subject to the lien for the debtor's unpaid taxes. Recent formulations of choateness have said that the identity of both the debtor and the intervenor must be certain, the extent of the intervenor's claim must be definite,[6] and the property in which the intervenor's interest inheres must be specific. United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). In certain circumstances, it might also be required that the intervenor have either title to, or possession of, the property in which he asserts his interest.[7] United States v. Gilbert Associates, Inc., 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953).

■■■ The thrust of the federal requirement of choateness, then, is that the intervenor must show that the property

6. With respect to a mortgage, it is sufficient that the amount due have a maximum limit. See note 3, supra.

7. Neither possession nor title is to be required of an intervening mortgagee, as the former would convert the mortgage into a pledge or other interest, and the latter would depend upon the fortuitous circumstances as to whether title theory, lien theory, or either was recognized as a matter of local law.

interest he asserts has become sufficiently alienated from the assets of the tax debtor to satisfy the interests of federal tax policy. Whether the intervenor has also perfected his interest against other third parties is irrelevant. The New Hampshire recording statute, in its application to a conditional sale, however, concerns itself only with perfection as against third parties and adds nothing to the federally required perfection as against the conditional vendee tax debtor. Perfection as to third parties being superfluous, the statute becomes irrelevant. Miller's interest as against the tax debtor corporation was already as perfected as it could be. See NH RSA 382–A:9–201.

■ This is not to say that the recording statute would not be of importance to the federal concept of perfection with respect to other types of intervening interests whose choateness may be in question. Either state law [8] or sound federal policy, or both, may require recordation of certain types of interests as an integral step in the perfection of the respective liens arising therefrom. It is in this context that it is properly announced that in order to establish the choateness of his interest, an intervenor must comply with all the state requirements for the protection of his interest. Much of the litigation in this area concerns judgment creditors, statutory creditors' liens and statutory liens for state and local taxes. E. g., United States v. State of Vermont, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964); United States v. White Bear Brewing Co., 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871 (1956); United States v. Acri, 348 U.S. 211, 213, 75 S.Ct. 239, 99 L.Ed. 264 (1955); United States v. Scovil, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271 (1955); United States v. City of New Britain, supra; United States v. Security Trust & Savings Bank, supra; State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 371, 67 S.Ct. 340 (1946).

As noted earlier, however, mortgages and purchases have traditionally remained aloof from this hassle over choateness. Both under state law (NH RSA 382–A:9–201) and in substantial reality, the properly executed sale or mortgage operates to conclude the rights of the parties to the transaction as between themselves. Inherent in the transaction is the creation and transfer of property interests so specific as to more than meet the requirements of the federal concept of choateness. Nothing more can be done under state law to perfect their interests as against each other.

While compliance with state recording statutes may in some instances, then, be considered a necessary prerequisite to the establishment of the choateness of some types of interests, compliance with NH RSA 382–A:9–302(1) (d) in the present case does not serve to add one whit of perfection to Miller's interest as against the corporation. The statute provides only the additional, and here superfluous, perfection as against third parties; it does not add to, or affect, the requisite federal perfection or choateness.

Seventh, as noted in Gauvey v. United States, supra, Congress provided in 26 U.S.C. § 6323 that a federal tax lien must be recorded before it can be valid against a subsequent purchaser, mortgagee, pledgee or judgment creditor, but Congress did not also provide that these latter interests must be recorded in order to gain priority over a tax lien. The permissible inference drawn from this provides further reason for holding that recordation of the conditional sales contract was unnecessary here.

Turning, at length, from this rather extended discourse concerning factors deemed not controlling in the present case, it is, in sum, the holding of this court that the conditional sales contract executed on October 4, 1961, operated to vest in Miller a security interest which

---

8. While not obliged to, the federal courts would probably accept a state law denial of choateness. E. g., State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 371, 67 S.Ct. 340, 91 L.Ed. 348 (1946).

was valid, effective and perfected as between the parties; that recordation and the attendant perfection as to third parties was not necessary; and that as a prior valid security interest, analogous to that of a chattel mortgage, the interest of Miller fits well within the recognized exception to 31 U.S.C. § 191 in favor of such prior conveyances. No opinion is intended to be expressed herein with respect to the validity of the tax lien, the amount due under the conditional sales contract, or the relative priorities existing among the conditional sales contract and the interest of any creditors other than the Government.