Frances M. JACOBS, Plaintiff,

United States of America, Intervening Plaintiff,

v.

AETNA LIFE INSURANCE COMPANY, a foreign corporation, and Rex C. Jacobs, Defendants.

Frances M. JACOBS, Plaintiff,

United States of America, Intervening Plaintiff,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, a foreign corporation, Defendant

and

Rex C. Jacobs, Cross-Defendant.

Civ. Nos. 24870, 24871.

United States District Court
E. D. Michigan, S. D.

June 6, 1969.

McClintock, Fulton, Donovan & Waterman, by Frederic W. Heller, Detroit, Mich., for plaintiff Frances M. Jacobs.

Robert J. Grace, U. S. Atty., Milton J. Trumbauer, Asst. U. S. Atty., Detroit, Mich., John Mullenholz, Attorney, Tax Division, U. S. Department of Justice, Washington, D. C., for intervening plaintiff United States of America.

Fischer, Sprague, Franklin & Ford, by Edward B. Harrison, Detroit, Mich., for defendant Aetna Life Ins. Co.

Dickinson, Wright, McKean & Cudlip, by Edgar J. Howbert, Jr., Detroit, Mich., for defendant Prudential Ins. Co. of America.

J. Bruce Donaldson, Detroit, Mich., for defendant Rex C. Jacobs.

## OPINION

THORNTON, District Judge.

This is a case in which the plaintiff, Frances M. Jacobs, and the intervening plaintiff, United States of America, hereinafter referred to as the Government, each claims priority in right to the yearly income and accrued funds from two annuity contracts between Rex C. Jacobs and the two defendant insurance companies.

Two separate cases were filed, one against Aetna Life Insurance Company and the other against The Prudential Insurance Company of America. These cases have been consolidated for trial. For purposes of considering the legal issue(s) involved there is no difference between the two cases. Our discussion and determination, therefore, will have equal application to the two annuity contracts and be dispositive of both cases. These cases have been submitted to the Court on a Stipulation of Facts filed herein, successive briefs submitted to the Court by the plaintiff and the intervening plaintiff, and oral argument. A succinct statement of the factual background of this controversy is adequately set forth in the Government's brief of January 29, 1968. It is as follows:

"The plaintiff, Frances M. Jacobs, is the former wife of the defendant-taxpayer, Rex C. Jacobs. Rex C. Jacobs and Frances M. Jacobs were divorced on August 4, 1949, pursuant to a decree entered by the Wayne County Circuit Court, Civil No. 425931. (Stip. Ex. A.) As a result of provisions of the divorce decree captioned 'Property Settlement,' Rex C. Jacobs was obligated to make monthly payments in the sum of $500 to the friend of the court for Frances M. Jacobs. (Stip. Ex. A.)

Paragraph 4 of the 'Property Settlement' provides:

'IT IS FURTHER ORDERED ADJUDGED AND DECREED that the defendant pay to the plaintiff the sum of Five Hundred ($500.00) Dollars per month, in advance, commencing with the date hereof and continuing until the death of the plaintiff or defendant, whichever shall first occur, said payments to be made to the Friend of the Court. *As security for the payment of said sums, the defendant shall assign and deliver to the Friend of the Court all of his right, title and interest in the Prudential Life Insurance Claim Settlement Certificate No. 146,041 and Aetna Life Insurance Company Policy No. N1130510, and the contract supplemental thereto upon the following conditions:*

(a) *Upon default in the payment of said sum of Five Hundred ($500.00) Dollars the Friend of the Court may collect any and all sums due to defendant under said instruments until such default shall have been cured.*

(b) Upon the death of Rex C. Jacobs to deliver said certificate and policy and supplemental contract to Frances M. Jacobs.

(c) Upon the death of Frances M. Jacobs, during the lifetime of Rex C. Jacobs, to return said Certificate, policy and supplemental contract to Rex C. Jacobs. (Emphasis added.)'

A delegate of the Secretary of the Treasury of the United States served notices of levy, based upon federal tax liens, against Aetna Life Insurance Company and Prudential Insurance Company of America on May 4, 1960, and September 15, 1961, respectively. No payments have been made pursuant to the levies. (Compl. in Intervention pars. VII, VIII.)

As a result of the annuity contracts described above and federal tax levies, a sum exceeding $30,000 has accrued. Frances M. Jacobs asserted a claim of priority to the accrued funds based upon the conditional assignments by Rex C. Jacobs to the friend of the court. The United States of America asserts that it has a superior claim to the accrued funds by virtue of its federal tax liens. The taxpayer, Rex C. Jacobs, contends that the liens of the United States of America are superior to the claim asserted by Frances M. Jacobs. (See pleadings of the respective parties.)"

Plaintiff's statement of the factual background might be couched in slightly different terms subject to correspondingly different innuendos. An example would be the Government's use of the term "conditional assignment" appearing in line 5 of the last paragraph above. Plaintiff would not use that term because it misrepresents her position here. It is her position that the assignments were absolute assignments * * * absolute to the extent that Rex Jacobs no longer had any property interest in the two annuity contracts against which the Government could assess tax liens. There is no question but that Rex complied with the "security for payment" provision of paragraph 4 of the property settlement. He did this contemporaneously with the entry of the divorce decree (August 4, 1949). For aught that appears in the record, the course of property settlement payments at the rate of $500 per month from Rex to Frances flowed smoothly from August 1949 until May 1953. At that time Rex was in default. Aetna and Prudential, alerted by the Friend of the Court, came to the rescue for the June installments. The even course was resumed, apparently, as *Rex* received the July, August and September 1953 annuity payments, again through the good offices of the Friend of the Court in alerting Aetna and Prudential that Rex had cured his default. However, this state of affairs was not to last for long. By August 21, 1953 Rex apparently decided that the most direct route was Aetna and Prudential direct to his obligee via the Friend of the Court—enough of their remittances to him and his remittances to the obligee via the Friend of the Court. He, therefore, wrote two letters, the result of which—aside from sparking this lawsuit, served to simplify bookkeeping all around and to save postage for everybody. The two letters are practically identical, both dated August 21, 1953 and signed by Rex C. Jacobs. The letter to Aetna instructs Aetna as follows:

"Please use this letter as your authority to mail $250.00, or half of the annuity check sent me to the Friend of the Court in accordance with the Assignment until further notice."

The letter to Prudential instructs Prudential as follows:

"Please use this letter as your authority to mail $250.00, or half of the annuity check sent me to the Friend of the Court the first of each month. This is in accordance with the assignment and is to be done until further notice."

From the date of those letters (August 21, 1953) to Aetna and Prudential no payment to *Rex* has been made by the two companies pursuant to the two annuity contracts herein. The payments were made to the Friend of the Court since that date until May 1960 (from Aetna) and September 1961 (from Prudential). Those dates represent the dates of notices of levy, on account of federal tax liens for indebtedness of Rex Jacobs, served against the two companies. Since those dates there has accumulated a sum of money at the rate of $250 per month per annuity contract, which is payable either to the plaintiff herein, pursuant to the property settlement as provided in the divorce decree, or to the intervening plaintiff, the United States of America, pursuant to its tax liens. The two insurance companies make no claim of interest in the proceeds of the annuity contracts.

Attached to the Government's first brief is an affidavit of the District Di-

rector of Internal Revenue (dated January 26, 1968) stating that the federal tax liability of Rex C. Jacobs amounts to $166,825.76. (It is apparent that even as of today's date the fund accumulated from the annuity contracts' income is not over $65,000.00, and is probably closer to $55,000.00.)

The statute pursuant to which the Government claims its priority is 26 U.S. C.A. §§ 6321 and 6323. The pertinent parts are as follows:

"§ 6321. Lien for taxes

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

"§ 6323. Validity and priority against certain persons

(a) Purchases,[1] holders of security interests, mechanic's lienors, and judgment lien creditors.—The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.

\*　\*　\*　\*　\*　\*

(h) Definitions.—For purposes of this section and section 6324—

(1) Security interest.—The term 'security interest' means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liabil-

ity. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth."

The Government contends that under the above statutory provisions its liens attached to the "rights" of Rex to receive the annuity payments and to the monthly payments themselves as "property" of Rex. We here quote from the Government's brief at pages 6–7:

"The taxpayer at all times retained the right to receive $250 per month on each life insurance policy and claim settlement certificate unless he defaulted in making payments of $500 per month to plaintiff in accordance with the divorce decree. (Stip. par. 2; Stip. Ex. B–2, C–2.) According to the divorce decree and conditional assignments, the taxpayer's default in making monthly payments of $500 to plaintiff was a prerequisite to any claim that could possibly be asserted by plaintiff to the funds in controversy. Thus, the conditional assignments by Rex C. Jacobs to the friend of the court were given only as *security* for compliance with the divorce decree. (Stip. par. 2; Stip. Ex. A, B–2, C–2.) The conditional assignments did not divest the taxpayer, Rex C. Jacobs, of his rights to demand $250 per month from each insurance company on their respective contracts.

This is not to say that the plaintiff has no interest in the policies or the payments. The plaintiff has an interest in the policy and claim settlement certificate to the extent granted her in the Chancery Decree; i. e., 'as security for payments of' the sums of money owed to the plaintiff under the 'prop-

1. West Publishing Co.'s footnote appears as follows:

▬▬▬▬▬

"So in original. Probably should be 'Purchasers.'"

erty settlement' provision of the decree. Plaintiff's interest is not an interest of complete ownership, but a security interest in the funds. Once a tax lien attaches to property or rights to property all priorities and related interests in that property or right to property are governed by federal law. United States v. Acri, 348 U.S. 211 [75 S.Ct. 239, 99 L.Ed. 264]; United States v. City of New Britain, Conn., 347 U.S. 81 [74 S.Ct. 367, 98 L.Ed. 520]."

The Government thus categorizes plaintiff's interest in the two annuity contracts as a "security interest" and relies on § 6323(a) and (h), above set forth, as the basis for its claim that its tax liens herein are "superior and prior to the claims of the plaintiff" (Government brief, page 9). The Government's reasoning is best set forth by quoting two paragraphs from its brief, at page 8:

"The essential elements to be met in this case are whether on the date the notice of lien was filed (May 23, 1957) the 'property [was] in existence' and whether on that date the plaintiff had 'parted with money or money's worth.' The properties before the Court are accrued payments under the annuity contracts. These payments came into existence when they became due; i. e., payments came into existence on a monthly basis. Thus, the only properties in existence were those payments due before the notice of tax lien came into existence.

Whether the plaintiff 'parted with money or money's worth' logically deals not with the consideration that she rendered in obtaining the original property settlement, but with the default that gave her the rights to look to the annuity payments under the security agreement. The plaintiff parted with money or money's worth entitling her to look to the annuity payments when the taxpayer defaulted on his personal obligation to make monthly payments of $500 and plaintiff parted with her right to re-

ceive the monthly payments directly from the taxpayer."

The plaintiff's answer to the Government's reliance on § 6323(a) and (h) is that (a) is a 1966 amendment; that (h) is a 1966 addition to § 6323; and that the effective date of each is set forth in section 114(a) of the Act. That section states that (a) and (h) "shall apply after the date of enactment of this Act, regardless of when a lien or a title of the United States arose or when the lien or interest of any other person was acquired." Section 114(b) sets forth an exception to the amendments to the effect that they shall not apply in any case if they would "(A) impair a priority enjoyed by any person (other than the United States) holding a lien or interest prior to the date of enactment of this Act."

Plaintiff contends that in any event § 6323, pre- or post-amendment, does not apply because it was intended as a protection for "gap" transactions—where a person acquires his interest *subsequent* to the attaching of the federal lien but *prior* to its filing. Plaintiff says her situation is not a gap one at all, but a pre-gap one—that her interest arose before the attaching of the lien as well as before its filing. Plaintiff cites United States v. Delaware Trust Co., 167 F.Supp. 465 (D.C.Del.1958); United States v. Phillips, 198 F.2d 634 (5th Cir. 1952); and United States v. Lebanon Woolen Mills Corp., 241 F.Supp. 393 (D.C.N.H.1964) as supportive of the above. Apart from this, plaintiff argues that § 114(a) and (b) would exempt plaintiff's interest from the Government's claim, even if § 6323 were applicable.

Plaintiff in its reply brief, after treating the above, joins issue with the Government at the Government's own posing of the issue—"the essential elements to be met in this case are whether on the date the notice of lien was filed (May 23, 1957) the 'property [was] in existence' and whether on that date

the plaintiff had 'parted with money or money's worth'" (Government brief, page 8). The Government and plaintiff make fine distinctions in attempting to delineate what must be held to constitute "property and rights to property" and what is meant by "the property is in existence" and the "holder has parted with money or money's worth."

We think we have set forth sufficiently the positions of the parties to indicate their directly divergent views on the interpretation they place on § 6323. It is our considered view that the annuity contracts here involved must encompass the whole ball of wax—the contracts and the rights inherent in those contracts, including the right to payments due in the future. The property here cannot be given the restrictive view of being limited to "the accrued payments under the annuity contracts." As for the holder parting with money or money's worth, we cannot agree with the Government that plaintiff initially parted with money or money's worth at the time of the default in the payments that gave her the right to the annuity contract income. The *property settlement* must be held to be the initial point at which she parted with money or money's worth. At that point she accepted a guaranty of $500 a month income, to continue until the death of the plaintiff (Frances M. Jacobs) or defendant (Rex C. Jacobs), "whichever shall first occur," as a quid pro quo.

Under the Government's own theory of insistence on the applicability of § 6323 we conclude that plaintiff must prevail here. Since both parties have placed reliance on United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954) we make note that, in our opinion, our conclusion does not run afoul of the holding in *New Britain*.

An appropriate judgment may be presented.