FAMILYFIRST BANK f/k/a Ware Cooperative Bank, Plaintiff

v.

Stanley KUSEK, Sr., Audra Lee Chartier, David W. Kusek, Joseph W. Burek, Trustee of Burek Realty Trust, Inland Gasoline Stations, Inc., Joe's Truck Repair, Inc., Navjeet K. Bal, Commissioner Commonwealth of Massachusetts Department of Revenue, and United States Internal Revenue Service, Defendants.

Civil Action No. 08–30130–KPN.

United States District Court, D. Massachusetts.

July 15, 2009.

Robert S. White, Bourgeois, Dresser & White, Worcester, MA, for Plaintiff.

Karen Wozniak, U.S. Department of Justice, Washington, DC, John J. McCarthy, Doherty, Wallace, Pillsbury & Murphy, Springfield, MA, Eileen Ryan McAuliffe, Massachusetts Department of Revenue, Boston, MA, for Defendants.

*MEMORANDUM AND ORDER WITH REGARD TO THE INTERNAL REVENUE SERVICE'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION FOR SUMMARY JUDGMENT (Document Nos. 38 and 43)*

NEIMAN, United States Magistrate Judge.

This is an interpleader action commenced by FamilyFirst Bank f/k/a Ware Cooperative Bank ("the Bank") concerning $97,019.13 remaining after foreclosing on a mortgage it held on real estate owned by David Kusek ("Kusek") at 189 River Road in Ware, Massachusetts. The interpled parties include Kusek himself, Stanley Kusek, Sr. ("Kusek, Sr."), Audra Lee Chartier ("Chartier"), Joe's Truck Repair, the Commissioner of the Commonwealth of Massachusetts Department of Revenue, Inland Gasoline Stations, Inc. ("Inland"), Joseph W. Burek ("Burek") as Trustee of Burek Reality Trust ("Burek Realty"), and the United States Internal Revenue Service ("I.R.S."). For one reason or another, all the interpled parties have fallen by the wayside except Inland and Burek, on the one hand, and the I.R.S., on the other hand, both of whom claim to have competing priority liens. Those parties, together with the Bank, have consented to this court's jurisdiction, *see* 28 U.S.C. § 636(c); Fed.R.Civ.P. 73(b), and the I.R.S. has filed motions for summary judgment. For the reasons which follow, the court will allow the I.R.S.'s motions, but in part only.

I. STANDARD OF REVIEW

"Summary judgment is warranted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Uncle Henry's, Inc. v. Plaut Consulting Co.*, 399 F.3d 33, 41 (1st Cir.2005) (quoting Fed. R. Civ. Pro. 56(c)). "The party with the burden of proof must provide evidence sufficient for the court to hold that no reasonable fact-finder could find other than in its favor." *Scottsdale Ins. Co. v. Torres*, 561 F.3d 74, 77 (1st Cir.2009).

II. FACTS

The following facts are not in dispute. By instrument dated August 9, 1995, and recorded the following day, Kusek, Sr., reserving a life estate for himself, granted to Kusek the real property located at 189 River Road. Thereafter, the I.R.S. made assessments against Kusek for unpaid in-

come taxes for tax periods ending on December 31 in calendar years 1996, 1997, 2000, 2001 and 2002. The yearly amounts claimed to be due vary from $1,100 to $27,000. Notices of the assessments were given to Kusek somewhat sporadically, first, on June 30, 1997 (for calendar year 1997), next, on August 23, 2004 (for calendar year 2002), and then, on February 7, 2005 (for calendar years 2000 and 2001). On March 11, 2005, a Notice of Federal Tax Lien covering the tax assessment for the period ending December 31, 2002 (calendar year 2002), was recorded in the Hampshire County Registry of Deeds. No such notices for the other calendar years were ever recorded in the Registry.

Burek's lien took a different path. On December 23, 1999, judgment was entered against Kusek in a civil action against him by Burek, Burek Realty and Inland in the Hampshire County Superior Court. Judgment in the amount of $252,942.55 issued on May 22, 2000, and, on June 6, 2000, a copy of an execution was recorded in the Registry of Deeds along with a return thereon regarding the levy of execution. Nearly eight years later, on May 15, 2008, a copy of a duplicate execution with respect to the December 23, 1999 judgment against Kusek was recorded in the Registry of Deeds along with the return thereon regarding the levy of execution.

In the interim, on January 14, 2007, Kusek died. On January 25, 2007, his will was filed without a petition with the Hampshire County Probate and Family Court. And on June 12, 2008, Chartier filed a petition for administration of his estate, which action remains pending. To the court's knowledge, no executor has yet been appointed.

Meanwhile, on January 23, 2008, judgment was issued in favor of the Bank in its foreclosure action on the subject real estate. On May 16, 2008, the property was sold at public auction for $155,000, and by deed dated June 13, 2008, transferred to a William K. Fay. From the $155,000 in proceeds, the Bank received $57,980.87 for amounts due on its mortgage, loan charges, and other costs. Shortly thereafter, on July 2, 2008, the Bank filed the instant interpleader action with respect to the balance of $97,019.13.

### III. PROCEDURAL BACKGROUND

After the present parties were unable to resolve the matter amongst themselves, the I.R.S. filed a motion for partial summary judgment seeking the distribution of $27,566.36, plus statutory interest through November 18, 2008, toward satisfaction of its tax assessment against Kusek for calendar year 2002. (As indicated, that assessment, originally in the amount of $19,031.23, was the only one with respect to Kusek for which a Notice of Federal Tax Lien has been recorded in the Registry of Deeds.) Burek opposed that motion, asserting that his pre-recorded lien on his judgment against Kusek had priority.

The court heard argument on the I.R.S.'s motion for partial summary judgment on April 15, 2009, and, at the same time, addressed the Bank's Motion for Attorney's Fees relative to its costs to commence and pursue the interpleader action. The court allowed the Bank's motion in part and awarded it $5,300, based on a formula which eliminated from the Bank's request ($7,222.84 plus fees incurred since the motion was filed) the percentage which the existing I.R.S. tax lien (of approximately $28,000) represented of the total amount deposited in court plus interest thereon (approximately $98,000). The court, however, reserved ruling on the I.R.S.'s motion for partial summary judgment, since the motion contemplated further discovery, and directed the I.R.S. to file a supplemental brief so that the court

could resolve all remaining matters; it appeared to the court that any remaining facts could be easily garnered and the questions of law thereafter presented.

The I.R.S. not only filed a supplemental brief but a motion for summary judgment which sought over $51,000 plus statutory interest, claiming priority not only for its 2002 tax assessment against Kusek but also for its tax assessments for calendar years 1996, 1997, 2000 and 2001. In essence, the I.R.S. argues that, given the timing of the duplicate execution on its judgment, Burek did not have a viable lien on the property at the time of Kusek's death and failed to obtain a lien on the property after his death and prior to its sale, such that Burek had no priority lien over the I.R.S.'s lien and assessments. Burek has opposed the motion, asserting that his judgment lien has maintained its priority over all the tax assessments.

## IV. DISCUSSION

■ The parties do not dispute that federal law determines the priority of competing federal and state-created liens. *See United States v. Rodgers,* 461 U.S. 677, 683, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983). Nor do the parties dispute that section 6321 of the Internal Revenue Code ("Code"), 26 U.S.C. § 6321, authorizes the I.R.S. to assert liens upon "all property and rights to property" belonging to a taxpayer for delinquent taxes. Moreover, the parties acknowledge that section 6322 of the Code provides that "the lien imposed by Section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed ... is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322.

■ As the Supreme Court has explained, however, "[f]ederal tax liens do not automatically have priority over all other liens." *I.R.S. v. McDermott,* 507 U.S. 447, 448–50, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993). "Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right.'" *Id.* at 449, 113 S.Ct. 1526 (quoting *United States v. City of New Britain,* 347 U.S. 81, 85, 74 S.Ct. 367, 98 L.Ed. 520 (1954)). This common law rule of priority, however, is qualified by section 6323 of the Code, which provides, in part, that the tax lien imposed by section 6321 shall not be valid against a judgment lien creditor until notice of the tax lien has been properly filed. *See* 26 U.S.C. § 6323(a). In turn, a state-created lien takes priority over a later-assessed federal lien as long as the state-created lien is perfected, *i.e.,* choate, so that "the identity of the lienor, the property subject to the lien, and the amount of the lien are established" prior to the filing of the subsequent federal lien. *City of New Britain,* 347 U.S. at 84, 74 S.Ct. 367. *See also Baybank Middlesex v. Electronic Fabricators, Inc.,* 751 F.Supp. 304, 310 (D.Mass.1990) ("A lien becomes choate when there is nothing more to be done to perfect it, *i.e.,* when the identity of the lienor, the property subject to the lien, and the amount of the lien is established."). As the First Circuit has explained, "[c]hoateness of a state created lien is a matter of federal law and mirrors the standard applicable to liens asserted by the government under sections 6321 and 6322 of the Code." *Progressive Consumers Fed. Credit Union v. United States,* 79 F.3d 1228, 1235 (1st Cir.1996). "State recording statutes," the First Circuit continued, "are relevant 'only insofar as controlling federal authority dictates or sound federal policy counsels their application.'" *Id.* (quoting *United States v. Lebanon Woolen Mills Corp.,* 241 F.Supp. 393, 398 (D.N.H.1964)).

Given these standards, there is no question that Burek's judgment lien of $ 252,-942.55 was originally perfected when an execution was recorded on June 6, 2000, and that, as such, it had priority not only over the notice of federal tax lien (for calendar year 2002) later recorded on March 11, 2005, but, as well, the other I.R.S. assessments for which notices were never recorded. There is also no question that Burek was a judgment lien creditor. *See Smith Barney, Harris Upham & Co. v. Connolly,* 887 F.Supp. 337, 342–43 (D.Mass.1994) (discussing "judgment lien creator" as defined by Treasury regulations). Treasury regulations define a "judgment lien creditor" as "a person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money." 26 C.F.R. § 301.6323(h)–1(g). "In the case of a judgment for the recovery of a certain sum of money," the regulations continue, "a judgment lien creditor is a person who has perfected a lien under the judgment on the property involved." *Id.* Moreover, a judgment lien creditor must perfect a lien on the property involved according to local law. *See id.*

The parties, however, dispute whether Burek's judgment lien has maintained its priority. For its part, the I.R.S. argues first that Burek did not bring forward in the Registry of Deeds its June 2000 levy within six years from the date the original execution was recorded. (A levy is the taking or setting aside of specific property

of a debtor for the benefit of a creditor. *See Wright v. Morley,* 150 Mass. 513, 23 N.E. 232 (1890).) Under Massachusetts law, the I.R.S. argues, if a levy on execution is not completed by sale within six years from the date on which notice of the execution was recorded, "the levy if otherwise valid shall be void as to any land within such registry unless within said six-year period it shall be brought forward in such registry of deeds." Mass. Gen. L. ch. 236, § 49A. As a result, the I.R.S. asserts, Burek lost his lien on Kusek's property as well as his status as a judgment lien creditor.

Relatedly, the I.R.S. argues that the duplicate execution Burek filed on May 15, 2008, was ineffective because, by that time, Kusek's real property had passed directly to his heirs. *See Shrewsbury v. Murphy,* 333 Mass. 290, 130 N.E.2d 559, 560 (1955) (noting that real property passes to heirs at the time of death). Moreover, the IRS argues, while a creditor may be entitled to levy "on land of a deceased," Mass. Gen. L. ch. 236, § 53, Burek has not presented any evidence that he followed the procedures set forth in that statute. Accordingly, the I.R.S. asserts, Burek did not have a lien on the Kusek property at the time of the foreclosure sale.[1]

For his part, Burek argues that even were a levy to lapse when a properly recorded execution is not acted upon within six years, the creditor, by statute, "may resort to any other legal remedy for satisfaction of his judgment," Mass. Gen. L. ch.

---

1. The I.R.S. also argues that the period of time within which Burek could bring an action against the personal representative of Kusek's estate has now run. *See* Mass. Gen. L. ch. 19, § 9. In this vein, the I.R.S. also claims to have an unpaid income tax assessment against Kusek for the 2004 tax year assessed on April 23, 2007, with respect to which it intended to file a proof of claim with the Hampshire County Probate and Family

Court on or about Monday, April 27, 2009. In addition, the I.R.S. claims not to be bound by the statute of limitations or to be subject to the defense of laches. *See Snyder v. United States,* 1995 WL 724529, at *12 (E.D.N.Y. July 26, 1995). Accordingly, the I.R.S. contends, the estate will be entitled to the remainder of the subject proceeds to pay the claim, assuming it does not have other assets.

236, § 49A, including securing a new execution, Mass. Gen. L. ch. 235, § 19. Moreover, Burek argues, the fact that he may not have been able to levy on the subject property in the interim, the priority of his lien ought not be affected for the purposes of distributing funds in this action; the I.R.S. had notice of the original execution at the time its federal lien was filed on March 11, 2005, which knowledge should bar it from gaining priority.

Burek also disputes the I.R.S.'s argument concerning the invalidity of the duplicate execution insofar as it was filed after Kusek's death. An original execution which issues after the death of a judgment debtor may be invalid, Burek argues, citing *Hildreth v. Thompson*, 16 Mass. 191, 193 (1819), but the execution here was simply a duplicate of the one issued prior to Kusek's death. Burek also points out that no documents reflecting a change of ownership of the property had been recorded in the Registry prior to the filing of the duplicate execution. In short, Burek claims that the I.R.S. is seeking to penalize him when there is no evidence that he had knowledge or notice of Kusek's death nor of the unrecorded tax liens for which the I.R.S. now claims further priority. Such a result, Burek asserts, is not supportable in law or equity.

■ While it is no simple task to wend through the myriad statutes and competing arguments of the parties, it bears repeating that Burek was a judgment lien creditor prior to the 2002 I.R.S. lien being recorded. This stands in sharp contrast to an I.R.S. lien recorded after an attachment but before the attaching creditor obtained judgment. An attaching creditor usually obtains a potential right, whereas a judgment creditor obtains a perfected lien which is superior to a subsequently recorded I.R.S. lien. *See United States v. Security Trust & Sav. Bank*, 340 U.S. 47, 50, 71

S.Ct. 111, 95 L.Ed. 53 (1950) (discussing California laws).

■ Still, it was incumbent upon Burek to bring forward his perfected lien in a timely manner or have it lapse under Massachusetts law. Once it lapsed, it lost priority over the I.R.S. Notice of Tax Lien for calendar year 2002. The one case upon which Burek relies, *Citibank, N.A. v. Leahy*, 2005 WL 937338, at *2 (Mass.Sup.Ct. Mar. 28, 2005), provides little solace. At best, *Leahy* stands for the proposition that a creditor with an attachment on a property has priority over a later-filed federal tax lien even though the creditor, who obtained a judgment prior to the tax lien, did not execute on the judgment until after the tax lien was recorded. *Id.* But see *Middlesex Sav. Bank v. Johnson*, 777 F.Supp. 1024, 1028 (D.Mass.1991) (rejecting "relation-back" doctrine as ineffective against a federal tax lien) (citing *Security Trust & Sav. Bank*, 340 U.S. at 50, 71 S.Ct. 111). Nonetheless, the court noted that a creditor runs the risk of having his priority expire after six years. *Leahy*, 2005 WL 937338, at *2 n. 8. Burek points to no authority for the proposition that his duplicate execution is a valid substitute for his having failed to bring the original execution forward in a timely manner.

To be sure, the First Circuit's decision in *Progressive*, a case seeking to quiet title to a property pursuant to 28 U.S.C. § 2410(a)(1), did give this court some pause before coming to this conclusion. As is true here, the court there had to deal with competing claims of the I.R.S. and a state creditor, a credit union holding a mortgage on a property. The mortgage had been assigned to the credit union by a bank which held an original mortgage that had been discharged when the bank refinanced the loan. The new mortgage, later assigned to the credit union, was filed with the Registry after the I.R.S. had, in the

interim, filed its notice of tax lien. The district court gave priority to the federal tax lien, but the First Circuit reversed, concluding that, under Massachusetts law regarding the doctrine of unjust enrichment, the credit union, as mortgagee, was entitled to be restored to the priority position held by the bank before the mortgage had been refinanced and the original mortgage discharged. *Id., 79* F.3d at 1236–37.

In coming to this conclusion, the First Circuit recognized that "it is well-settled that federal law determines the priority of competing federal and state created liens." *Id.* at 1235 (citations omitted). The First Circuit also recognized that in order for a state created lien to take priority over a later assessed federal lien it must be "choate" which, as indicated, "is a matter of federal law [that] mirrors the standard applicable to liens asserted by the government under sections 6321 and 6322 of the Code." *Id.* at 1234–35 (citing cases). To repeat, according to the First Circuit, "[s]tate recording statutes are relevant 'only insofar as controlling federal authority dictates or sound federal policy counsels' their application." *Id.* (quoting *Lebanon Woolen Mills Corp.,* 241 F.Supp. at 398).

In reversing the district court, the First Circuit also cited section 6323(i)(2) of the Code, which provides that "[w]here, under local law, one person is subrogated to the rights of another with respect to a lien or interest, such person shall be subrogated to such rights for purposes of any lien imposed by section 6321 or 6324." 26 U.S.C. § 6323(i)(2). The First Circuit read this provision as authorizing "application of the common law doctrine of equitable subrogation where provided by state law." *Progressive,* 79 F.3d at 1235 (footnote omitted). In turn, the First Circuit directed that "federal courts should presume applicability of state common law doctrines in determining the status of state created liens." *Id.* at 1235. "Such determinations do not contravene federal law," the First Circuit continued, "simply because they ultimately bear on the federal issue of who was first in time in determining priority." *Id.* at 1235–36.

In the end, the First Circuit applied the doctrine of unjust enrichment to enable the credit union to occupy the bank's former priority position. In doing so, the First Circuit rejected the district court's conclusion that the Massachusetts line of unjust enrichment cases did not concern federal tax liens:

> Whether or not federal tax liens are involved in such cases, to us, seems immaterial. This is mainly because the unjust enrichment doctrine operates only to restore a state created lien to the position it occupied prior to the inadvertent discharge. Reestablishing the party's position, of itself, does not disturb the status of competing liens-whether those of a private lienor or the federal government-in terms of their effective dates of attachment for the determination of priority. It equitably determines the effective date of the state created lien independent of other existing liens.

*Id.* at 1237. The First Circuit went on to cite instances in which courts have applied the doctrine of unjust enrichment to federal government and "have restored state created liens to their intended positions without regard for the United States' potential loss of priority under federal law." *Id.*[2]

---

**2.** *See United States v. McCombs,* 30 F.3d 310, 333 (2d Cir.1994) (holding that where government ran afoul of notice requirements of federal statute governing priority between federal tax liens and interests of subsequent purchasers, to deny subsequent holder of security interest priority over tax lien would allow government to "leap frog" the interests

At first blush, the broad language utilized by the First Circuit in *Progressive* appeared to apply to the situation in which Burek finds himself. As is true in *Progressive*, the I.R.S. could not have anticipated its current priority status because its recorded lien was clearly junior to Burek's lien. In addition, Burek's duplicate execution is related to the original execution as was the refinanced mortgage to the original mortgage in *Progressive*. Finally, absent what appears to be the inadvertent lapse of the execution, the I.R.S. would not have gained "serendipitous priority" over Burek's lien. *See id.* at 1237.

█ The problem with applying the broad language of *Progressive* is the First Circuit's invocation there of a specific doctrine of "unjust enrichment" applicable to mortgages, *i.e.*, "where a mortgage has been discharged by mistake, equity will set the discharge aside and reinstate the mortgage to the position which the parties intended it to occupy, if the rights of the intervening lienholders have not been affected." *Id.* at 1236 (quoting *North Easton Co-op. Bank v. MacLean*, 300 Mass. 285, 15 N.E.2d 241, 245 (1938)). *See also East Boston Sav. Bank v. Ogan*, 428 Mass. 327, 701 N.E.2d 331, 333–34 (1998) (extending the doctrine to sales as well as refinancings). Burek offers no parallel equitable principle relative to the circumstances in the instant case, *e.g.*, a failure, whether by mistake or not, to have brought a judgment lien forward.

█ The distinction between these two situations is further highlighted by the equitable subrogation at play in *Progressive*, as well as in the cases therein relied upon. In essence, equitable subrogation involves a party who advances funds to release a prior lien in reliance on maintaining a priority status. While it might be argued whether the bank's discharge of its original mortgage in *Progressive* was truly a mistake, it cannot be disputed either that monies passed or some consideration was garnered when the original loan was refinanced. *See East Boston Sav. Bank*, 701 N.E.2d at 334 ("Before equitable subrogation applies, a court must determine: '(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder.' ") (quoting *Mort v. United States*, 86 F.3d 890, 894 (9th Cir.1996) (further citation and footnote omitted)). Here, in contrast, no monies passed between parties; Burek simply failed or forgot to bring forward his lien. The court doubts that Massachusetts would extend its doctrines of equity this far. Accordingly and unfortunately, Burek lost the priority of his lien to the I.R.S.'s Notice of Tax Lien for calendar year 2002.

█ The I.R.S., however, has not convinced the court that its remaining tax

vested in two prior mortgage liens and would represent "a classic example of unjust enrichment"); *Dietrich Indus., Inc. v. United States*, 988 F.2d 568, 573 (5th Cir.1993) (holding that where purchaser who paid vendor's senior mortgage debt as part of purchase transaction with expectation that property was free of additional encumbrances, to deny equitable subrogation remedy "would give the government an unearned windfall in that it would elevate the government's liens for no good reason"); *Han v. United States*, 944 F.2d 526, 530 n. 3 (9th Cir.1991) (holding that where purchasers of residential property paid off and discharged priority position lender unaware that additional federal tax lien attached to property, to require the purchasers to pay a portion of the taxpayer's delinquent taxes would "unjustly enrich" and "produce a windfall" in favor of the United States).

assessments also gained priority over Burek as a judgment lien creditor, as evidenced by his duplicate execution. The I.R.S.'s argument to the contrary, the court finds that the duplicate execution did attach to the real property, which remained in Kusek's name on the record, and no assertion to the contrary has ever been pursued by either Kusek, Sr., who had reserved a life estate in the property when it was deeded to Kusek, or Chartier, who had filed a petition to administer Kusek's estate, both of whom had been served (and then defaulted) in this action. Further, the I.R.S.'s argument that Burek failed to follow the procedures set forth in Mass. Gen. L. ch. 236, § 53 simply does not apply to the current situation. Finally, it should be noted that the I.R.S. itself never took steps to record notices of lien for the additional tax assessments for which it now claims priority; its present attempt to obtain priority for those assessments is, simply put, overreaching. As the First Circuit has noted, "[a] major part of [the Federal Tax Lien Act of 1966] was 'designed to trim the government's power to collect tax claims, and to show a decent regard to the competing claims and interests of others who have had dealings with the taxpayer.'" *Rodriguez v. Escambron Dev. Corp.*, 740 F.2d 92, 97 n. 7 (1st Cir. 1984) (quoting William F. Young, Jr., *Priority of the Federal Tax Lien*, 34 U. Chi. L. Rev. 723, 723 (1967)). Young himself, who refers to the Act as an "artless statute," indicates that, at least in part, "Congress was motivated by a spirit of magnanimity toward private interests when it rewrote [section 6323]" and hoped "that the courts will be similarly moved as they face the formidable task of applying and rationalizing this elaborate statute." *Id.*, 34 U. Chi. L.Rev. at 760.

The only remaining issue, therefore, is the amount due first to the I.R.S. as the result of the priority of its 2002 Notice of Tax Lien. Burek argues that the I.R.S. should only be entitled to the amount of its levy, $19,031.23, the amount set forth in its Notice of Tax Lien ($16,864.42 plus $2,166.81 in interest and penalties) and additional interest. For its part, the I.R.S. claims an amount due as of April 21, 2009 of $28,170.46, *i.e.*, the $19,031.23 plus additional interest *and penalties*.

The court believes that the amount due I.R.S. is only the $19,031.23, plus interest accruing since March 8, 2005 to the date of this decision. *See Middlesex Sav. Bank*, 777 F.Supp. at 1024 n. 3 (discussing whether the priority accorded a tax lien should extend to interest accrued subsequent to the date the lien arose). The assessment of further penalties is inappropriate. Accordingly, by July 30, 2009, the I.R.S. shall notify the court of the amount of interest accrued as the $19,031.23 for March 8, 2005, through today, which amount shall be added to the $19,031.23 lien. That total shall be distributed by the Clerk's office to the I.R.S. out of the funds now held by the court, with all remaining amounts to be paid to Burek.

## V. CONCLUSION

For the reasons stated, the I.R.S.'s motions for summary judgment are ALLOWED to the extent specified above.

IT IS SO ORDERED.